COMMONWEALTH of Pennsylvania,
Appellee

v.

David A. HELSEL, Appellant.

Superior Court of Pennsylvania.

Submitted Aug. 20, 2011.

Filed Sept. 14, 2012.

908

Douglas J. Keating, Altoona, for appellant.

Richard A. Consiglio, Assistant District Attorney, Hollidaysburg, for Commonwealth, appellee.

BEFORE: DONOHUE, LAZARUS, JJ. and McEwen, P.J.E.

OPINION BY DONOHUE, J.:

David A. Helsel ("Helsel") appeals from the judgment of sentence entered on May 6, 2011, by the Court of Common Pleas, Blair County. Upon review, we vacate the judgment of sentence and remand for proceedings consistent with this Opinion.

The testimony presented by the Commonwealth at trial reveals the following facts. On June 19, 2009, Helsel came upon several juveniles in a cemetery in Altoona. Posing as a cemetery employee, he informed them that there had been reports that they were knocking over headstones. The teens denied committing any acts of vandalism. After a brief physical altercation with one of the males, Helsel separated the two females from the group—M.B., age 12, and L.G., age 15—by telling them they had to come with him to the owner's house. He led them, holding them by the wrists for part of the way. The girls stated they did not run when Helsel released his grip because they were afraid. Upon reaching a wooded area, Helsel drew a knife and informed the girls he wanted to touch them all over their bodies. Fearing he would hurt them, the victims negotiated with Helsel, eventually agreeing that he could rub his penis against each of their backsides, and then they would be free to go. He engaged in this behavior with L.G. and then with M.B. Helsel told M.B. he wanted to have sex with her, and the victims tried to run away. At that, Helsel grabbed M.B. by the hair and pulled her further into the woods. While in the woods, Helsel attempted to take off M.B.'s shorts and to spread her legs, while M.B. fought to stop him.

L.G. ran to a nearby building that happened to be hosting a meeting of the Fraternal Order of Police. She informed police what had happened, and Patrolman Shaun McCready and Patrolman (now Corporal) Michael Sapienza went in search of M.B. and Helsel. Patrolman McCready heard a girl screaming, and upon reaching a cut-in that led into the woods, he saw

M.B. sitting with her back facing him and Helsel standing directly in front of her. He drew his weapon and told Helsel to get on the ground, at which Helsel fled. As the police ran after him, M.B. shouted that Helsel raped her. According to Corporal Sapienza, who came to the clearing immediately after Patrolman McCready, M.B. was naked from the waist down.

Multiple officers responded to assist in the search for Helsel. Corporal Sapienza apprehended him near the wood line at 15th Street and Bell Avenue; Helsel was found hiding under a pile of leaves, dirt and branches. A search incident to arrest revealed a knife in Helsel's pocket.

At the police station, the police gave Helsel his *Miranda* warnings, which Helsel waived and provided a statement wherein he reportedly admitted, in a recorded statement, that he attempted to have sex with M.B. in the woods.[1] Fingernail scrapings were taken from M.B. that matched Helsel's DNA profile.

Helsel was charged with 37 counts of various crimes. A three-day jury trial ensued, and Helsel testified in his own defense. He denied all of the allegations against him, instead stating that he happened upon the group of teens hanging out in the cemetery and joined them. He indicated that there was discussion about purchasing marijuana by the group, and that he accompanied M.B. and L.G. to make the purchase. He became separated from the girls, and upon hearing police sirens, he walked over to see what was going on, at which point he was arrested. According to Helsel, the police struck him several times and intimidated him, which caused him to provide the aforementioned admission.

On January 20, 2011, the jury convicted Helsel of unlawful restraint, attempted rape by forcible compulsion, attempted rape of a child, three counts of simple assault, two counts of recklessly endangering another person, two counts of terroristic threats, two counts of corruption of minors, and one count each of indecent exposure, possessing an instrument of crime, possession of a weapon, and harassment.[2] On February 8, 2011, the Commonwealth provided notice of its intention to seek a mandatory sentence under 42 Pa.C.S.A. § 9718.2(a)(2), which calls for a sentence of life imprisonment for any person convicted of an offense that requires registration as a sexual offender[3] who had "previously been convicted of two or more offenses arising from separate criminal transactions" that require the individual to register as a sexual offender. 42 Pa. C.S.A. § 9718.2(a)(2). This request was based upon Helsel's two prior convictions of rape and his current convictions of attempted rape of a child and attempted rape by forcible compulsion, all of which require Helsel to register as a sexual offender pursuant to Section 9795.1.

The sentencing hearing was held on May 6, 2011. The Commonwealth argued that Helsel's conviction of attempted rape was his third strike as a sexual offender, mandating a sentence of life in prison. Helsel argued that this conviction should be treated as his second strike pursuant to our Supreme Court's holding in *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185 (2005), because he pled guilty to both

1. The transcript of Helsel's statement was not included in the certified record on appeal.

2. 18 Pa.C.S.A. §§ 2902(a)(1), 901, 3121(a)(1), (c), 2701(a)(1), 2705, 2706(a)(1), 6301(a)(1), 3127, 907(a), (b), 2709(a)(1).

3. 42 Pa.C.S.A. § 9795.1(a), (b).

prior rapes at a single hearing and the sentences for the crimes ran concurrently, and thus he had only one opportunity to reform, not two. The trial court found the language of Section 9718.2(a)(2) to be unambiguous in that it required Helsel's current conviction of attempted rape to be treated as his third strike. It sentenced Helsel as follows:

- life imprisonment for attempted rape of a child;
- a concurrent term of life imprisonment for rape by forcible compulsion;
- a concurrent term of 40 to 80 months in prison for unlawful restraint;
- a concurrent term of 30 to 60 months of imprisonment for indecent exposure;
- a concurrent term of 12 to 24 months for each count of simple assault;
- a concurrent term of 30 to 60 months for each count of recklessly endangering another person;
- a concurrent term of 30 to 60 months for each count of corruption of minors;
- a concurrent term of one to two months for harassment;
- a concurrent term of 30 to 60 months for terroristic threats;
- a concurrent term of 30 to 60 months for possession of a weapon;
- the sentence for possessing an instrument of crime merged with possession of a weapon for sentencing purposes; and
- ordered Helsel to pay costs and restitution.

On July 21, 2011, the trial court issued an order clarifying and amending Helsel's sentence, such that he received two concurrent life sentences and an additional 256 to 512 months of incarceration running concurrently to the life sentences.

On May 16, 2011, Helsel filed a motion for reconsideration/modification of his sentence raising, *inter alia*, trial court error in sentencing him as a third-strike sexual offender. The trial court granted reconsideration and ordered the parties to file new legal memoranda. On August 26, 2011, the trial court held a hearing on the motion, and on September 6, 2011, it declined to modify the sentence.

Helsel filed a timely notice of appeal, followed by a court-ordered statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He now raises the following issues for our review:

I. Whether [Helsel] was improperly sentenced as a Three Strike Offender under 42 Pa.C.S.A. § 9718.2 in light of *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185 (2005)?

II. Whether [Helsel's] life sentence for [c]riminal [a]ttempt, rape was cruel and unusual punishment?

III. Whether the [l]ower [c]ourt erred in not granting [Helsel's] demurrer on the charge of [c]riminal [a]ttempt, rape of [c]hild?

IV. Whether the [l]ower [c]ourt erred in not sustaining [Helsel's] objections to the Commonwealth's consistent misstatements of facts and interjection of their [*sic*] personal opinion in the closing argument?

Helsel's Brief at 19.

Helsel's first issue on appeal is a question of statutory construction of the so-called "three strikes" statute for recidivist sexual offenders. This is a question of law, and our standard of review is plenary. *Shiffler*, 583 Pa. at 484, 879 A.2d at 189. Furthermore, because the absence of the third strike provision requiring a mandatory life imprisonment sentence for rape would otherwise have exposed him to a

maximum sentence of 40 years,[4] it implicates the legality of Helsel's sentence. *See id.*

The sentencing provision in question states, in relevant part:

> (1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9795.1(a) or (b) (relating to registration) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9795.1(a) or (b) or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. [ ... ]

> (2) Where the person had at the time of the commission of the current offense previously been convicted of two or more offenses arising from separate criminal transactions set forth in section 9795.1(a) or (b) or equivalent crimes under the laws of this Commonwealth in effect at the time of the commission of the offense or equivalent crimes in another jurisdiction, the person shall be sentenced to a term of life imprisonment, notwithstanding any other provision of this title or other statute to the contrary. [ ... ]

42 Pa.C.S.A. § 9718.2(a).

The record reflects that Helsel was sentenced as a third-strike offender based upon his current conviction of attempted rape of a child and attempted rape by forcible compulsion. *See* 42 Pa.C.S.A. § 9795.1(a)(2), (b)(2) (indicating that an individual convicted of attempted rape is subject to the registration requirements under Megan's Law). Helsel previously raped two children on two separate dates, and pled guilty to both. He was sentenced for both rapes at a single hearing, and the sentences were ordered to run concurrently.[5]

Helsel asserts that despite the fact that he has two prior convictions of rape, he should have been treated as a second-strike offender, as he essentially served a single prison term for both offenses, with no opportunity to reform in between. Helsel's Brief at 25. Because he was never sentenced as a second-strike offender, Helsel argues that it is unlawful for him to be "called out on three strikes" now. *Id.* at 26. He relies upon our Supreme Court's holding in *Shiffler* in support of his position.

*Shiffler* involved the interpretation of the three strikes statute for recidivist violent offenders. It states, in relevant part:

---

4. 18 Pa.C.S.A. § 3121(e)(1) provides that a person convicted of rape of a child may be sentenced to a maximum of 40 years in prison. When sentencing for an attempt, it is considered "the same grade and degree as the most serious offense for which is attempted[.]" 18 Pa.C.S.A. § 905(a).

5. The trial court indicates that Helsel was convicted of raping two children—a seven year old that Helsel lured under a bridge on June 13, 1999, and an eight year old that Helsel raped in a bathroom on August 15,

1999. Opinion and Order After Reconsideration, 9/6/11, at 2. No information regarding the prior convictions appears in the certified record on appeal. Helsel stipulated at sentencing, however, that he was convicted at two separate criminal action numbers of two counts of rape of a child. *See* N.T., 5/6/11, at 1. Neither the Commonwealth nor the trial court dispute that Helsel was sentenced for each rape on a single day, those sentences were ordered to run concurrently, and he was not sentenced as a second-strike offender.

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. [ ... ]

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. [ ... ] Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S.A. § 9714(a).

The defendant in *Shiffler* pled guilty to burglary, aggravated assault, theft, and resisting arrest on June 25, 2002. Thereafter, the Commonwealth filed a notice of its intention to seek mandatory sentencing. At sentencing, the Commonwealth produced evidence that in 1997, the defendant pled guilty to three separate charges of burglary—one that he committed on October 5, 1996, and two that he committed on February 16, 1997—to which he pled guilty and was sentenced at a single hearing. As punishment for those crimes, the defendant received three terms of 11 1/2 to 23 months of imprisonment, ordered to run concurrently. *Shiffler*, 583 Pa. at 483 n. 5, 879 A.2d at 187 n. 5.

The trial court denied the Commonwealth's request to sentence the defendant as a third-time offender, and the Commonwealth appealed. This Court vacated the sentence and remanded for resentencing, holding that the defendant should have been sentenced to the 25–year mandatory minimum sentence as a third-strike offender, as each of the previously pled-to burglaries constituted separate strikes for sentencing purposes. *Id.* at 482, 879 A.2d at 188. The Supreme Court granted allowance of appeal and reversed.

The Supreme Court agreed that the defendant had been previously convicted of several crimes of violence, which constituted "separate criminal transactions" under the statute. It so found based upon its prior decision in *Commonwealth v. Bradley*, 575 Pa. 141, 834 A.2d 1127 (2003), wherein the Court held the word "transaction" had a " 'peculiar and appropriate' meaning in the sentencing context[.]" *Shiffler*, 583 Pa. at 490, 879 A.2d at 193 (quoting *Bradley*, 575 Pa. at 152, 834 A.2d at 1133–34). In order for multiple crimes to qualify as a single criminal transaction, the *Bradley* Court explained that they must be part of a "single, continuous train of criminal events with no break in criminal activity." *Id.* at 491, 879 A.2d at 193 (quoting *Bradley*, 575 Pa. at 154, 834 A.2d at 1134).

The Supreme Court found, however, that Section 9714(a)(2) "is ambiguously silent regarding whether predicate convictions must be sequential," *i.e.*, first offense, first conviction, first sentence; second offense, second conviction, second sentence; third offense, third conviction, third sentence. *Id.* at 495, 879 A.2d at 195. The *Shiffler* Court noted that in its decision in *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990 (1993), it concluded that according to "recidivist philosophy," "the point of sentence enhancement is to punish

more severely offenders who have persevered in criminal activity *despite the theoretically beneficial effects of penal discipline."* *Shiffler,* 583 Pa. at 494, 879 A.2d at 195 (quoting *Dickerson,* 533 Pa. at 299, 621 A.2d at 992) (emphasis supplied). The Court went on to say:

> Particularly salient here is the implicit link between enhanced punishment and behavioral reform, and the notion that the former should correspondingly increase along with a defendant's foregone opportunities for the latter. Any other conception would ignore the rationale underlying the recidivist philosophy, *i.e.,* that the most culpable defendant is 'one, who after being reproved, 'still hardeneth his neck." Just as the second-time offender enhancement under subsection (a)(1) is meant to punish a defendant more severely when that defendant has offended before and has been afforded an opportunity to reform, so too is the third-time offender enhancement under subsection (a)(2), which increases the minimum punishment to twenty-five years, obviously meant to punish a defendant more severely when he has already foregone **two** opportunities to reform himself. The generally recognized purpose of such graduated sentencing laws is to punish offenses more severely when the defendant has exhibited an unwillingness to reform his miscreant ways and to conform his life according to the law.

*Shiffler,* 583 Pa. at 494, 879 A.2d at 195 (internal citations omitted) (emphasis supplied).

Lastly, the Court found support for its holding in another subsection of the statute—the "vacation clause" of Section 9714(d). That subsection states, in relevant part: "Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated." 42 Pa.C.S.A. § 9714(d). According to the *Shiffler* Court,

> [t]his provision clearly reflects a recidivist philosophy approach. Indeed, that an offender may be vindicated by the very court that sentenced him— apparently unrestricted by any time bar or other procedural bar—is further proof that the General Assembly did not intend this statute to operate in an unduly harsh manner. To the contrary, the vacation clause indicates the General Assembly's intent to be realistic in its assessment of the status of the violent-crime offender, ensuring that his enhanced punishment is consistent with his actual level of repeat culpability.

*Shiffler,* 583 Pa. at 496, 879 A.2d at 196.

We now turn to the case *sub judice.* We have conducted extensive research on the issue and found no precedent interpreting Section 9718.2(a)(2). In undertaking our review of this question of first impression, we are guided by the Statutory Construction Act, which instructs: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). If the words of the statute are clear and free of ambiguity, no further determination is required, as "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). In reading the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as

have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S.A.1903(a).

Only when the words of the statute are not explicit are we to delve deeper to determine the Legislature's intention. 1 Pa.C.S.A. § 1921(c). There are several presumptions that may be used to determine the intent of the Legislature:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.

(4) That when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language.

(5) That the General Assembly intends to favor the public interest as against any private interest.

1 Pa.C.S.A. § 1922.

Furthermore, "when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history." *Shiffler,* 583 Pa. at 485, 879 A.2d at 189 (citing 1 Pa.C.S.A. § 1921(c)). "[W]hile statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S.

§ 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant." *Shiffler,* 583 Pa. at 485, 879 A.2d at 189.

The trial court found that the language of Section 9718.2(a)(2) requires that Helsel be sentenced as a third-strike offender because, in its view, the language of the statute is unambiguous—"[t]hree separate criminal transactions, three convictions, three strikes." Opinion and Order after Reconsideration, 11/6/11, at 4. Even if ambiguous, the trial court disagreed that Section 9714 is identical to Section 9718.2 since the former statute deals with violent offenders in general while the latter deals with sex offenders, including violent sex offenders, specifically. *Id.* at 6. The trial court further differentiated this statute from Section 9714 based upon the "circumstances surrounding the passage" of Section 9718.2(a)(2):

Megan's Law was legislated and passed during a period of heightened awareness regarding the danger sexual offenders pose to society. Increased penalties and substantial changes to 42 Pa.C.S.A. § 9795 et seq (Megan's Law) accompanied the passage of 42 Pa.C.S.A. § 9718.2, such as cutting reporting time from 10 days to 48 hours as well as increasing the penalties for registration violations. On the Federal level, the Adam Walsh Act/SORNA (Sexual Offender Registration Notification Act) was being debated, which changed and dramatically increased the enforcement and penalties for sexual offenders in the federal system as well as across the state systems.

Legislatures across the country, including Pennsylvania, were cracking down on sexual offenders when invoking these new and harsher statutes. Senate Bill 944, which included both

§ 9718.2 and the changes to the body of Megan's Law, passed the Senate by unanimous vote, and there were a number of Senators speaking out in favor of the stricter measures within it. Senator Orie, who was responsible for sponsoring and drafting the bill in large part stated, 'My fellow colleagues, in the course of protecting the safety, and even the lives of these children, no measure can be too strong. The comprehensive legislative piece under Senate Bill No. 944 is a monumental step for Pennsylvania in creating a safer place for our children. Should we fail to enact this legislation, then our own government and elected officials have regrettably become the real and present danger to our Pennsylvania children.' *Legislative Journal—Senate*, June 19, 2006. One of the co-sponsors, Senator Rafferty, plainly stated, 'we are sending a strong message to those people who come into the Commonwealth of Pennsylvania, or who may be in Pennsylvania, you touch one of our children, you abuse one of our children, you get 25 years in jail, GPS monitoring, and **life on a second offense.** (emphasis added) We are not going to tolerate it here in the Commonwealth of Pennsylvania.' *Id.* The Senator uses the term 'offense' and not 'conviction'. There is clear indication that it was intended that offenses count consecutively, not convictions. There was a lone dissenting vote upon the bill's passage in the House, meaning that, of the combined 253 members of the Legislature, only one voted against this bill. With such over-whelming support, the intent of the legislature in passing this bill is clear. An exchange between Speaker of the House Vitali, the lone dissenter and Rep. O'Brien, a Bill Sponsor, suggests that [*Shiffler*] was not to apply; 'we elected to go with these enumerated offenses and then go with the 25–year mandatory for a second or a new offense under Megan's Law. So what we did was added the Megan's Law offenses into the Orie bill in the Senate. So it is a very thoughtful process ... Because the national trend is to punish these offenders more seriously, and we think we are doing this in a thoughtful way.' *Legislative Journal—House*, November 13, 2006. By using the language, 'new or second offense' the most logical inference is that the legislature intended there not be the sequential scheme pronounced in [*Shiffler*] and it is evident that the Legislature put significant thought into that decision. [*Shiffler*] had been decided well before § 9718.2 was passed, which is further indication of the Legislature's intent that *Shiffler* not apply.

*Id.* at 7–8.

■ For the reasons discussed below, we respectfully disagree with each of the trial court's alternative analyses.[6] In particular, we observe, as Helsel did, that the pertinent language of the sentencing statute interpreted by our Supreme Court in *Shiffler* is identical to the pertinent language of the statute at issue in this case. *Compare* 42 Pa.C.S.A. § 9714(a)(2) *with* 42 Pa.C.S.A. § 9718.2(a)(2). Indeed, the only differences between the relevant portions of the statutes are the crimes to which

---

**6.** Helsel does not contest the finding that his prior rapes were separate criminal transactions for purposes of the applicability of the sentencing provision contained in Section 9718.2(a)(2). As he confines his argument to the question of whether the sentences for the predicate offenses must be sequential, we likewise limit our analysis that issue.

they are addressed (crimes of violence versus crimes that require the offender to register under Megan's Law) and the mandatory penalties imposed (10 years in prison for a second violent offense and 25 years in prison for third and subsequent violent offenses versus 25 years in prison for a second enumerated sex offense and life imprisonment for third and subsequent offenses). The statutory language at issue has already been interpreted by our Supreme Court in *Shiffler* as being "ambiguously silent" as to the whether predicate convictions must be sequential. *Shiffler*, 583 Pa. at 495, 879 A.2d at 195. Thus, we are bound by that determination under the doctrine of *stare decisis*. *See Commonwealth v. Mitchell*, 588 Pa. 19, 72 n. 20, 902 A.2d 430, 462 n. 20 (2006).·

We are further bound by the Supreme Court's specific interpretation of the intention of the General Assembly in using the same non-explicit language in Section 9718.2(a)(2) as it did in Section 9714(a)(2). As stated above, a presumption exists "[t]hat when a court of last resort has construed the language used in a statute, the General Assembly in subsequent statutes on the same subject matter intends the same construction to be placed upon such language." 1 Pa.C.S.A. § 1922(4). The subject at issue in Section 9718.2(a)(2) is the same as the subject at issue in Section 9714(a)(2)—mandatory minimum sentencing for recidivist offenders.

Moreover, as noted by the trial court, Section 9718.2(a)(2) was enacted in 2006 after the Supreme Court's 2005 decision in *Shiffler*. However, contrary to the opinion of the trial court, this gives rise to a finding that the Legislature intended that Section 9718.2 be subject to the same interpretation as Section 9714. *See* 1 Pa.

C.S.A. § 1922(4); *cf. Mitchell*, 588 Pa. at 72 n. 20, 902 A.2d at 462 n. 20 ("[T]he failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment.") (citation omitted).

Finally, our conclusion that Section 9718.2(a)(2) is subject to the "recidivist philosophy approach" as detailed by the *Shiffler* Court in interpreting Section 9714(a)(2) finds additional support in that the Legislature included an identical "vacation clause" in both statutes. *Compare* 42 Pa.C.S.A. § 9714(d) *with* 42 Pa.C.S.A. § 9718.2(c) ("Should a previous conviction be vacated and an acquittal or final discharge entered subsequent to imposition of sentence under this section, the offender shall have the right to petition the sentencing court for reconsideration of sentence if this section would not have been applicable except for the conviction which was vacated."); *see Shiffler*, 583 Pa. at 496, 879 A.2d at 196. Therefore, as determined in *Shiffler*, this indicates that the Legislature intended that a sexual offender's "enhanced punishment is consistent with his actual level of repeat culpability." *Shiffler*, 583 Pa. at 496, 879 A.2d at 196.

When authoring Section 9718.2, the General Assembly made a conscious decision to use **precisely** the same language as it did when it authored the revised version of Section 9714 which was interpreted in *Shiffler*. As 9718.2 was created after our Supreme Court ·decided *Shiffler*, we are compelled to conclude that the Legislature intended that Section 9718.2 be subject to the same interpretation as Section 9714.[7]

---

7. Our conclusion does not contradict the stated intention of the Legislature as set forth by

the comments made by Congressman Vitali and (now former) Senator Orie quoted by the

■ Having determined that the appropriate statutory construction is mandated by *Shiffler*, we turn to the facts of the instant case. The facts here are indistinguishable, for relevant purposes, from the facts of *Shiffler*. Helsel committed two prior offenses that occurred on separate dates and were perpetrated against two separate victims. Like the defendant in *Shiffler*, Helsel pled guilty to both crimes at a single hearing, was sentenced for both crimes at a single hearing, and the sentences were ordered to run concurrently. There is no indication that he was sentenced as a second-strike offender at that time. He had no time away from prison between the sentences for the first and second offense—he served the sentences simultaneously. He thus had no opportunity to reform between the first and second prison sentence. Shortly after being released from prison for the first and second rapes, he committed another offense that brought him under the ambit of Section 9718.2. Although this is his third conviction of a crime that requires him to register as a sexual offender resulting from three separate criminal transactions, because he served a single prison term for the first two convictions, he only had one opportunity to reform, not two. Based upon our Supreme Court's holding in *Shiffler*, Helsel should have been sentenced as a second-strike offender under Section 9718.2(a)(1). Therefore, the trial court erred by sentencing him as a third-strike offender under Section 9718.2(a)(2).

As his second issue on appeal, Helsel argues that his sentence of life imprisonment for attempted rape is unconstitutional as it is cruel and unusual punishment. Helsel's Brief at 28–30. Based upon our resolution of his first issue, however, this issue is moot.

■ Helsel next argues that the trial court erred by not granting his demurrer to the charge of attempted rape of a child. *Id.* at 31–32. Helsel recognizes that because he presented evidence after the denial of the demurrer, he waived this issue for appeal. *Id.* at 31; *see, e.g., Commonwealth v. Price*, 416 Pa.Super. 23, 610 A.2d 488, 489 (1992). He asks that we instead engage in a review of the sufficiency of the evidence to convict him of attempted rape of a child. Helsel's Brief at 31. As both this Court and our Supreme Court have condoned this practice, we will treat the issue as if it was a properly framed sufficiency argument. *See, e.g., Commonwealth v. Ilgenfritz*, 466 Pa. 345, 347 n. *, 353 A.2d 387, 388 n. * (1976); *Price*, 610 A.2d at 489.

■ Our standard of review is well settled:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any

trial court. By its very terms Section 9718.2 provides harsher penalties for recidivist sex offenders than for violent criminal offenders. A second strike under Section 9718.2(a)(1) subjects the offender to a mandatory minimum term of 25 years of imprisonment, as opposed to 10 years under Section 9714(a)(1);

a third-strike sex offender is mandated to receive a sentence of life in prison under Section 9718.2(a)(2), whereas a defendant facing a third strike under Section 9714(a)(2) receives a mandatory minimum sentence of 25 years in prison.

doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Bricker*, 41 A.3d 872, 877 (Pa.Super.2012) (citations omitted).

A person is guilty of rape of a child "when the person engages in sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3121(c). "A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S.A. § 901(a).

 Helsel asserts that because "attempt" is a specific intent crime, the Commonwealth had to prove beyond a reasonable doubt that Helsel knew M.B. was under the age of 13, and because there was no evidence of that kind presented, the evidence was insufficient to prove that he committed attempted rape of a child. Helsel's Brief at 31–32. The trial court, relying on our Supreme Court's holding in

*Commonwealth v. Hacker*, 609 Pa. 108, 15 A.3d 333 (2011), found that the Commonwealth did not have to prove that Helsel was aware that M.B. was under the age of 13 to be guilty of attempted rape of a child. Trial Court Opinion, 1/10/12, at 7–8.

*Hacker* involved a defendant convicted of solicitation [8] to commit rape of a child. The defendant appealed to the Superior Court, arguing that the evidence was insufficient to sustain the conviction, as there was no evidence presented that she was aware of the victim's age. This Court reversed the conviction, reasoning that because solicitation was a specific intent crime, the defendant "must have had a specific intent relative to all the elements" of rape of a child. *Id.* at 111, 15 A.3d at 335. The Supreme Court granted allowance of appeal, and reversed.[9] The Supreme Court explained:

> [W]hile § 3121(c) requires some *mens rea* for the sexual intercourse element, *mens rea* is immaterial to the age element of § 3121(c). The statute is [ ... ] an impure strict liability crime where culpability is required with respect to at least one material element but is not required as to others.
>
> \* \* \*
>
> When a statute includes a level of culpability, that level of culpability shall apply to all the material elements of the offense, unless a contrary purpose plainly appears. The General Assembly has expressed a contrary purpose here. It has ren-

8. "A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity

in its commission or attempted commission." 18 Pa.C.S.A. § 902(a).

9. We note that the Supreme Court issued its decision on January 18, 2011, one day before Helsel made his argument to the trial court on this issue.

dered a defendant's belief regarding a complainant's age irrelevant. It is well-settled that the General Assembly has an interest in recognizing that older, more mature individuals are in a position that would allow them to take advantage of the immaturity and poor judgment of very young minors. Given this interest, and that a defendant[']s belief regarding a complainant's age is immaterial, a contrary purpose plainly appears. It is difficult to believe the [L]egislature intended to require extra proof for an inchoate crime but excuse it for the underlying offense. As the General Assembly has expressly disapproved mistake of age defenses, and as the solicitation statute does not require proof of all elements of the underlying crime, we find a solicitor may not escape liability for the rape of a child merely by proffering ignorance as to the victim's age.

*Id.* at 112–14, 15 A.3d at 336 (emphasis added) (internal citations and quotations omitted); *see* 18 Pa.C.S.A. § 3102 ("[W]henever in this chapter the criminality of conduct depends on a child being below the age of 14 years, it is no defense that the defendant did not know the age of the child or reasonably believed the child to be the age of 14 years or older.").

Helsel attempts to differentiate this case from the holding in *Hacker* based upon the fact that he was convicted of attempt and

the defendant in *Hacker* was convicted of solicitation.[10] Helsel's Brief at 32. However, both attempt and solicitation are specific intent crimes and, as with solicitation, the Commonwealth need not prove every element of the crime for a person to be guilty of attempt—only that the defendant took a substantial step towards committing the crime. *See* 18 Pa.C.S.A. § 901. Moreover, the "contrary purpose" expressed by the General Assembly is not limited to solicitation; a defendant's belief as to the age of his victim is irrelevant for any inchoate crime involving the crime of rape of a child. *See* 18 Pa.C.S.A. § 3102. Indeed, the Supreme Court did not limit its holding to those convicted of solicitation to commit rape of a child, but made it broadly applicable to those convicted of an inchoate crime involving the rape of a child. As such, Helsel's argument is without merit.

■■■ As his final issue on appeal, Helsel argues that the trial court erred by not sustaining his objections to portions of the Commonwealth's closing argument. Helsel's Brief at 33–34. Specifically, he states that the Commonwealth committed prosecutorial misconduct when the prosecutor misstated the facts when he said that "officers" saw Helsel standing over M.B., as only a single officer, Patrolman McCready, observed Helsel with M.B., and when the prosecutor interjected his personal opinion by saying that Helsel was "caught red handed."[11] *Id.* at 33. The trial court

---

**10.** It appears that at the time he argued the motion before the trial court, Helsel was not aware that the Superior Court's decision in *Hacker* had been reversed. *See N.T.*, 1/19/11, at 175–76. During his argument on the demurrer, Helsel regarded the *Hacker* case as "analogous" to his case, but identified that he was accused of committing a different inchoate crime than the defendant in *Hacker*. *Id.* at 176. Because he did make some effort, however minimal, to differentiate his circumstances from that of the defendant in *Hacker*,

we will not find the issue waived. *Cf.* Pa. R.A.P. 302(a) (arguments not raised below are waived for purposes of appeal).

**11.** Helsel also argues that the prosecutor vouched for the credibility of the Commonwealth's witnesses when he stated that M.B. and L.G. "had no reason to lie." Helsel's Brief at 33–34. Our review of the record reveals that Helsel did not object to this statement, and thus it is waived. Pa.R.A.P. 302(a); *Commonwealth v. Shamsud-Din*, 995 A.2d

found that none of the statements complained of rose to the level of impropriety by the prosecutor, and regardless, the prosecutor remedied each instance complained of by Helsel immediately after Helsel objected. Trial Court Opinion, 1/10/12, at 10–11.

We review claims of prosecutorial misconduct according to the following standard:

> Our standard of review for a claim of prosecutorial misconduct is limited to whether the trial court abused its discretion. In considering this claim, our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one. Not every inappropriate remark by a prosecutor constitutes reversible error. A prosecutor's statements to a jury do not occur in a vacuum, and we must view them in context. Even if the prosecutor's arguments are improper, they generally will not form the basis for a new trial unless the comments unavoidably prejudiced the jury and prevented a true verdict.

*Commonwealth v. Bedford,* 50 A.3d 707, 715–16 (Pa.Super.2012) (internal citations and quotations omitted).

We begin with the claim that the prosecutor misstated the facts to the jury when he said that "officers" instead of "an officer" saw Helsel standing over M.B. The record reflects that the prosecutor did use the word "officers" and indicated that "they" saw Helsel standing over M.B. N.T., 1/20/11, at 100. Helsel objected to this misstatement, as only Patrolman McCready testified that he saw Helsel standing over M.B. in the woods. *Id.* at 100–01. Immediately thereafter, the pros-

ecutor told the jury that they should rely on their own recollection of the facts, not his recollection. *Id.* at 101.

A new trial is not warranted because the language used by the prosecutor was improper; these words must cause the jury to be prejudiced, biased, and hostile against the defendant such that it would be unable to evaluate the evidence and render a true verdict. *See Commonwealth v. Williams,* 537 Pa. 1, 22, 640 A.2d 1251, 1261–62 (1994) (no new trial required where prosecutor asked during closing why the defendant would confess to first degree murder, and after objection by defense counsel, stated it was for the jury to determine the degree of murder the defendant committed). Moreover, the record reflects that when addressing this evidence in his own summation, counsel for Helsel stated: "What other evidence is there besides the testimony of the girls and the boys? The police in the woods saying **they** saw my client standing over [M.B.]" N.T., 1/20/11, at 88 (emphasis added). We therefore conclude that no prejudice or bias occurred because of this simple misstatement by the prosecutor, and Helsel is not entitled to a new trial on this basis.

Helsel also complains that the prosecutor interjected his personal opinion when he said that the police caught Helsel "red handed," as he did not preface the statement with the words "I submit" to indicate it was not his personal belief. Helsel's Brief at 34. The record reflects, however, that at the time counsel for Helsel objected to the statement, the prosecutor informed the trial court that he was cutoff, and that he was about to say "I submit." N.T., 1/20/11, at 110. When he

1224, 1228 (Pa.Super.2010) ("in order for a claim of error to be preserved for appellate review, a party must make a timely and specific objection before the trial court at the appropriate stage of the proceedings; the failure to do so will result in waiver of the issue") (citation omitted).

was permitted to resume his summation, the prosecutor said: "As I stated, ladies and gentlemen, I submit the evidence all showed he was caught in the act red-handed." *Id.* at 111.

■ "It is improper for a prosecutor to offer his or her personal opinion as to the guilt of the accused or the credibility of any testimony. However, it is well within the bounds of proper advocacy for the prosecutor to summarize the facts of the case and then to ask the jury to find the accused guilty based on those facts." *Commonwealth v. Hutchinson,* 611 Pa. 280, 25 A.3d 277, 307 (2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 2711, 183 L.Ed.2d 70 (2012). Based upon our review of the evidence and the context in which the objection arose, we conclude the prosecutor did not offer his personal opinion, but was properly summarizing the evidence presented. No relief is due.

In summary, we conclude that Helsel's allegations of trial court errors that occurred during the course of the guilt phase of his trial are without merit. The trial court erred, however, in sentencing Helsel as a third-strike offender pursuant to Section 9718.2(a)(2). We therefore vacate his judgment of sentence on that basis. On remand, the trial court shall resentence Helsel pursuant to Section 9718.2(a)(1) for the attempted rape charges. Because we vacate Helsel's judgment of sentence, he must also be resentenced for his other convictions.

Judgment of sentence vacated. Case remanded with instructions. Jurisdiction relinquished.