J-S67002-14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM ALBERT RICHARDS, | : | |
| | : | |
| Appellant | : | No. 1741 WDA 2013 |

Appeal from the Judgment of Sentence September 25, 2013,
Court of Common Pleas, Allegheny County,
Criminal Division at No. CP-02-CR-0006475-2013

BEFORE:  DONOHUE, MUNDY and FITZGERALD*, JJ.

MEMORANDUM BY DONOHUE, J.:　　　　　　　**FILED NOVEMBER 12, 2014**

Appellant, William Albert Richards ("Richards"), appeals from the judgment of sentence of the Court of Common Pleas, Allegheny County, following a conviction of receiving stolen property, 18 Pa.C.S.A. § 3925(a). After a review of the record, we affirm the judgment of sentence, but vacate the amended order of restitution and remand to the trial court.

A summary of the relevant facts and procedural history is as follows. In 2012, Richards and Christopher Buckley ("Buckley") were neighbors in a duplex and shared a garage that was separated into two sides by a painted orange line down the middle of the garage.  During their time as neighbors, Richards and Buckley had an acrimonious relationship that resulted in several disagreements and multiple harassment claims filed by Buckley against Richards.

---

*Former Justice specially assigned to the Superior Court.

Between June 30, 2012 and July 3, 2012, Buckley and his wife noticed that several items were missing from a refrigerator and from several large storage containers located on their side of the garage. On July 12, 2012, Buckley called the police to report that Richards stole his property. No charges were filed against Richards at that time.

On March 11, 2013, while Richards was moving out of the duplex, Buckley saw some of the items he reported missing amidst Richards' belongings. Specifically, Buckley saw a drill set and several cans of paint that he noticed were missing from his storage containers in the garage. A few days after Richards moved, Buckley also discovered his fishing rods that he noticed were missing the previous summer behind the water heater on Richards' side of the garage. Thereafter, Buckley filed a private criminal complaint against Richards. Richards was charged with two counts of receiving stolen property.[1]

On September 25, 2013, the trial court held a bench trial. Buckley testified that the cans of paint he saw amidst Richards' belongings were significant because they did not contain stock colors, but contained colors that Buckley specifically had mixed at Lowe's. He also testified that he believed the drill set was his because it "was the exact same color set size, and it even matched the box that it originally came in. Like I said, it was a

---

[1] At the beginning of trial, the Commonwealth moved to withdraw the second count. N.T., 9/25/13, at 2.

- 2 -

brand new set. […] It had never been used. It was still in that same condition." N.T., 9/25/13, at 12-13. Richards, on the other hand, testified that he did not have any of the property that Buckley reported missing. He testified that his aunt gave him the paint that Buckley discovered and that he had tools in his garage, including the drill set, because he worked in construction and used tools.

At the conclusion of testimony, the trial court found Buckley's testimony to be credible and found Richards guilty. Richards waived his right to a presentence report and the trial court proceeded to sentencing that day. The trial court sentenced Richards to one year of probation and ordered him to pay restitution. The Commonwealth requested that the trial court set restitution at $3,050 based on the total value of the items taken. The trial court stated, "We're going to have to have a separate restitution hearing with regard to that. So we'll leave restitution open for 30 days. You'll have to submit to [defense counsel] who then can discuss with her client the basis for the value. […] Receipts will have to be provided." *Id.* at 27. The court concluded the hearing by stating, "You can schedule a restitution hearing for within the 30 days [], unless they can come to an amount -- by agreement, which I would suggest that they do because unless there's adequate documentation, it's kind of speculation, and we don't speculate." *Id.* at 28.

On October 25, 2013, Richards' appellate counsel filed a notice of appeal to this Court at 9:49 a.m. At 1:25 p.m., the Assistant District Attorney received an email from an account belonging to an individual by the name of Thomas Buckley listing items that Richards allegedly stole from Buckley, along with amounts owed for each item. The email did not provide any support or documentation for the amounts owed, but noted in parentheticals that most of the items listed were brand new. The email was signed, "Buffalo Bob." At 2:14 p.m., the Assistant District Attorney filed a Motion for Modification of Restitution, requesting that restitution be set at $2,695.90.

On October 29, 2013, the trial court issued an order modifying restitution, amending the amount of restitution to $3,050.00. The trial court then issued a restitution court order on October 30, 2013, setting the amount of restitution to $2,695.00.

On January 28, 2014, Richards filed his statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).[2] On appeal, Richards raises the following two issues for our review, which we have reordered for ease of disposition:

1. Did the Commonwealth present sufficient evidence that the defendant intentionally received stolen

---

[2] On October 30, 2013, the trial court ordered Richards to file a 1925(b) statement within 21 days or 21 days from receipt of last transcript. In his 1925(b) statement, Richards stated that he received transcripts on January 8, 2014. Therefore, Richards' 1925(b) statement was timely.

property or that he knew that the property was stolen?

2. Was the sentence illegal since the sentencing court increased restitution without jurisdiction, the record failed to support this speculative increase in restitution, and due process protections were not afforded to the defendant when restitution was increased?

Richards' Brief at 6.

For his first issue on appeal, Richards argues that the Commonwealth failed to present sufficient evidence to convict him of receiving stolen property. Our standard of review in assessing the sufficiency of the evidence presented is well settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all of the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and

> the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Helsel*, 53 A.3d 906, 917-18 (Pa. Super. 2012) (citing *Commonwealth v. Bricker*, 41 A.3d 872, 877 (Pa. Super. 2012)). "This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Orr*, 38 A.3d 868, 873 (Pa. Super. 2011) (citing *Commonwealth v. Cox*, 686 A.2d 1279, 1285 (Pa. 1996), *cert. denied*, 522 U.S. 999 (1997)).

In this case, the trial court found Richards guilty of receiving stolen property under 18 Pa.C.S.A. § 3925, which provides:

> **(a) Offense defined.**--A person is guilty of theft if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
>
> **(b) Definition.**--As used in this section the word 'receiving' means acquiring possession, control or title, or lending on the security of the property.

18 Pa.C.S.A. § 3925.

A conviction of receiving stolen property requires the Commonwealth to prove: "(1) the property was stolen; (2) the defendant was in possession of the property; and (3) the defendant knew or had reason to believe the property was stolen." *Commonwealth v. Foreman*, 797 A.2d 1005, 1011 (Pa. Super. 2002) (citing *Commonwealth v. Matthews*, 632 A.2d 570,

571 (Pa. Super. 1993)). Richards argues that the Commonwealth failed to prove these three elements. We will address each element separately.

First, Richards argues that the Commonwealth failed to establish that Richards stole Buckley's property. Richards claims that "[t]he only evidence presented that [he] took [] Buckley's food items and miscellaneous house items consisted of [] Buckley's unfounded accusations that [] Richards must have taken the items from the garage that multiple people were able to access." Richards' Brief at 36.

Buckley's testimony at trial established that several items were missing from the garage he shared with Richards. N.T., 9/25/13, at 7-9. Buckley testified that the garage was always locked: "there's a garage door that we use an automatic opener, but there were two doors. We always kept ours locked, and [Richards] always kept his locked, especially because the spring before that he had somebody come after looking for him, so he always kept it -- he was afraid of that." *Id.* at 8. When questioned at trial regarding who had access to the garage, Richards stated that he, his girlfriend, Buckley, Buckley's wife, and the landlord had access to the garage. *Id.* at 24.

As our standard of review provides, "[t]he Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Helsel*, 53 A.3d at 918. Viewing the evidence in the light most favorable to the Commonwealth as

the verdict winner, we conclude that the evidence is sufficient to support an inference that Buckley's property was stolen.

Turning to the second element, Richards contends that "[t]he only properly linked to [] Richards is a drill set and some cans of paint that [] Buckley alleged belonged to him, but [] Richards believed these items belonged to him."  Richards' Brief at 40.

At trial Buckley testified that on the day Richards moved out of his apartment, he saw a drill set and several cans of paint amidst Richards' belongings.  N.T., 9/25/13, at 11.  Buckley testified that the paint cans were significant because the paint color was not stock, but was a specific color that he made at Lowe's.  *Id.*  Buckley further testified that he saw this custom color painted on the walls inside of Richards' apartment.  *Id.* at 12. Similarly, the tool set Buckley saw amidst Richards' belongings was unique as "[i]t was the exact same color[, a soft chartreuse green and gray cover,] set size, and it even matched the box that it originally came in."  *Id.*  The tool set remained unopened and in the same condition as when Buckley purchased it.  *Id.* at 12-13.

Buckley also testified that he and the landlord discovered his fishing rods behind Richards' water heater on Richards' side of the garage.  *Id.* at 13-14.  The fishing rods had lures that were marked with Buckley's name. *Id.* at 14.  Buckley testified that he did not place the rods there and that he

previously asked Richards if he had seen them because they were missing. *Id.*

Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we conclude that the evidence is sufficient to prove that Richards possessed Buckley's property.

Finally, Richards argues that "[n]o evidence was presented that [] Richards knew that the paint cans and the drill set were stolen from [] Buckley." Richards' Brief at 44. This Court has held that "the mere possession of stolen property is insufficient to prove guilty knowledge, and the Commonwealth must introduce other evidence, which can be either circumstantial or direct, that demonstrates that the defendant knew or had reason to believe that the property was stolen." *Foreman*, 797 A.2d at 1012 (citing *Matthews*, 632 A.2d at 571).

At trial, Buckley testified that the items were taken from his side of the garage, from blue Rubbermaid containers that were labeled with their contents, sealed, covered with blankets, and stacked. N.T., 9/25/13, at 8-9, 12. Buckley testified that the containers from which the paint was taken were at the bottom of the stack and required taking two rows of the containers out to get to them. *Id.* at 12.

In *Commonwealth v. Marrero*, 914 A.2d 870 (Pa. Super. 2006), this Court deemed relevant in establishing guilty knowledge, "the location of the theft in comparison to the location where the defendant gained possession."

*Id.* at 873. "[E]ven if the accused offers an explanation for his possession of stolen property, the trier of fact may consider the possession as unexplained if it deems the explanation unsatisfactory." *Id.* (citing *Foreman*, 797 A.2d at 1012-13). Whether the defendant's explanation is satisfactory is a "question[] of fact for the trier of fact." *Commonwealth v. Newton*, 994 A.2d 1127, 1133 (Pa. Super. 2010) (citing *Commonwealth v. Williams*, 362 A.2d 244 (Pa. 1976)).

Richards claimed that he thought the items in question belonged to him and argues that "he was not trying to hide these items because they were sitting outside with the rest of his belongings where [] Buckley could see them." Richards' Brief at 44. The trial court, however, determined that Richards "was not credible in his testimony regarding the paint[ or] the tools." Trial Court Opinion, 4/3/14, at 3. This Court will not disturb such a finding. Accordingly, Richards is not entitled to relief on his sufficiency claim.[3]

For his second issue on appeal, Richards claims that "[t]he sentencing court erred in multiple respects by imposing an illegal sentence of

---

[3] We note that Richards cites to *Commonwealth v. Graham*, 596 A.2d 1117 (Pa. 1991), for the proposition that "the Commonwealth [cannot] sustain its burden of proof solely on the fact finder's disbelief of the defendant's testimony." Richards' Brief at 42-43. We find this statement of the law to be inapplicable herein as Richards' possession of Buckley's property in the garage from which the items were taken established circumstantial evidence that Richards had knowledge that the items were stolen. Thus, the Commonwealth did not sustain its burden solely on the fact finder's disbelief of Richards' testimony.

restitution." Richards' Brief at 17. Our well-settled standard of review provides that "a challenge to a court's authority to impose restitution is generally considered to be a challenge to the legality of the sentence." ***Commonwealth v. Gentry***, __ A.3d __, 2014 WL 4942271, at *3 (Pa. Super. Oct. 3, 2014) (citing ***Commonwealth v. Hall***, 994 A.2d 1141, 1143 (Pa. Super. 2010) (*en banc*), *affirmed on other grounds*, 80 A.3d 1204 (Pa. 2013)). "Issues relating to the legality of a sentence are questions of law[; as a result, o]ur standard of review over such questions is *de novo* and our scope of review is plenary." ***Gentry***, 2014 WL 4942271, at *3 (citing ***Commonwealth v. Akbar***, 91 A.3d 227, 238 (Pa. Super. 2014)).

Richards presents three separate arguments in support of his claim that the trial court imposed an illegal sentence of restitution: (1) the trial court modified the restitution order without jurisdiction; (2) the record did not contain adequate support for the increase in restitution, and the amount of restitution was therefore speculative; and (3) the court violated Richards' due process rights by increasing restitution without a hearing or opportunity to challenge the evidence. ***Id.*** at 19-35. We will address each of these arguments separately.

First, Richards asserts that the trial court did not have jurisdiction to modify the restitution portion of the judgment of sentence after he filed an appeal to this Court. Richards' Brief at 20. We begin by noting that trial courts are granted flexibility to amend orders, including orders of restitution.

Section 1106(c) of the Pennsylvania Crimes Code provides trial courts with the authority to issue, alter, or amend restitution orders. 18 Pa.C.S.A. § 1106(c). Subsection (c)(3) specifically provides:

> (3) The court may, **at any time** or upon the recommendation of the district attorney that is based on information received from the victim and the probation section of the county or other agent designated by the county commissioners of the county with the approval of the president judge to collect restitution, alter or amend any order of restitution made pursuant to paragraph (2), provided, however, that the court states its reasons and conclusions as a matter of record for any change or amendment to any previous order.

18 Pa.C.S.A. § 1106(c)(3) (emphasis added).

Richards does not dispute the trial court's authority to alter orders under section 1106(c)(3); rather, Richards argues that section 1106(c)(3) must be read in conjunction with Rule 1701(a) of the Pennsylvania Rules of Appellate Procedure, which provides, "[e]xcept as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may longer proceed further in the matter." *Id.*; Pa.R.A.P. 1701(a).

Richards also cites to *Commonwealth v. Weathers*, 95 A.3d 908 (Pa. Super. 2014), wherein a panel of this Court was presented with a similar situation to the one presented herein. In *Weathers*, the appellant was charged with one count of criminal mischief following an incident wherein the appellant threw a brick through a car window. *Id.* at 909. On

- 12 -

March 4, 2013, at the conclusion of a bench trial, the trial court found the appellant guilty. *Id.* at 910. At the sentencing hearing held on March 11, 2013, the Commonwealth requested $530.00 for restitution. *Id.* However, the Commonwealth did not possess a receipt to prove the amount of the repairs to support its request for restitution. *Id.* As a result, "the parties agreed to leave the restitution amount open until the Commonwealth received a receipt." *Id.* The trial court then sentenced the appellant to one-year probation and restitution in the amount of $1.00, "which was to be amended within thirty days upon the Commonwealth's providing a receipt." *Id.*

After the trial court in *Weathers* denied the appellant's post-sentence motion challenging the weight of the evidence, the appellant filed a timely notice of appeal on April 19, 2013 – more than 30 days after the original sentencing hearing. On June 3, 2013, "the trial court issued an amended order of restitution in the amount of $530.00." *Id.* On appeal to this Court, the appellant argued that the trial court improperly entered the restitution order more than 30 days after sentencing. *Id.* at 911. This Court agreed with the appellant, stating:

> Despite the 'at any time' language of section 1106(c)(3), we are compelled to conclude that in this case the trial court did not have jurisdiction to modify the order of restitution due to Appellant's timely filing of a notice of appeal. […] After the trial court denied Appellant's post-sentence motion, Appellant filed a timely notice of appeal on April 19,

- 13 -

2013. At that point, the trial court no longer had jurisdiction to proceed in this matter. **See** Pa.R.A.P. 1701(a) ('Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.'); **Commonwealth v. Ledoux**, 768 A.2d 1124, 1125 (Pa. Super. 2001) ('Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal.').[] Nevertheless, the trial court entered an order amending the amount of restitution on June 3, 2013. Despite the flexibility granted to the court to amend orders of restitution under section 1106(c)(3), here the court could not modify the order of restitution during a period when it did not have jurisdiction over the case.

**Id**. at 912 (footnote omitted). As a result, we vacated the trial court's amended order of restitution, with instructions that "the trial court may subsequently amend the order of restitution when it regains jurisdiction, following the conclusion of this appeal, provided that the court states its reasons for doing so as a matter of record." **Id**. at 913.

Although both Richards and the Commonwealth posit that **Weathers** is indistinguishable from the instant matter, we disagree. In **Weathers**, the appellant allowed the 30-day period that the trial court left open for restitution purposes to pass before filing a notice of appeal to this Court. The trial court amended the order of restitution 84 days after sentencing and more than a month after the appellant filed a notice of appeal to this Court. In the case at bar, Richards filed his notice of appeal on the thirtieth day, prior to the finalization of the sentencing order.

- 14 -

It is well-settled that "[w]ith limited exceptions, Pennsylvania law permits only appeals from final orders." ***Commonwealth v. Sabula***, 46 A.3d 1287, 1291 (Pa. Super. 2012); Pa.R.A.P. 341. Rule 341 of the Pennsylvania Rules of Appellate procedure provides that "[a] final order is any order that: (1) disposes of all claims and of all parties; or (2) is expressly defined as a final order by statute; or (3) is entered as a final order pursuant to subdivision (c) of this rule." ***Id.*** In this case, there was no final order from which Richards could appeal, as the trial court expressly left the question of restitution open for a period of 30 days. "In the context of criminal proceedings, an order of 'restitution is not simply an award of damages, but, rather, a sentence.'" ***Commonwealth v. Atanasio***, 997 A.2d 1181, 1182-83 (Pa. Super. 2010) (citing ***Commonwealth v. C.L.***, 963 A.2d 489, 494 (Pa. Super. 2008)). Richards filed the appeal on the thirtieth day. At that time, the trial court had not entered a final order. Thus, we find Richards' appeal to be premature.

Under Rule Pa.R.A.P. 905(a)(5), however, a premature appeal is subsequently perfected when a final, appealable order is entered. Pursuant to Rule 905(a)(5), the appeal is "treated as filed after such entry and on the day thereof." ***Id.*** Thus, although Richards' appeal was premature, the appeal was perfected on October 29, 2013, after the trial court entered a final, appealable order. Richards' claim that the trial court did not have

jurisdiction to amend the order after he filed an appeal is therefore without merit.

Richards argues that in the alternative, the sentencing court did not have jurisdiction to enter the order because the order was entered four to five days after the 30 day deadline. Richards' Brief at 22. We also disagree with this argument. As Richards states in his brief, 42 Pa.C.S.A. § 5505 provides that a sentencing court has 30 days to modify its order if no appeal is taken. *Id.* at 21. Section 5505, however, "applies only to final orders and does not apply to interlocutory orders." *Commonwealth v. Williams*, 893 A.2d 147, 149 (Pa. Super. 2006). As the order of sentence in this case was not a final order, the trial court was not limited by the 30 day jurisdictional limit of section 5505. Accordingly, we conclude that the trial court had jurisdiction to enter the modified order beyond the thirtieth day.

For his second argument, Richards claims that the increase in restitution was speculative. Richards' Brief at 24. Richards argues that the trial court improperly "relied on a hearsay email signed by someone named 'Buffalo Bob,' that included a list of items allegedly stolen, along with prices. Most of the items were never discussed at trial or sentencing and no information was presented how 'Buffalo Bob' obtained pricing information." *Id.* at 24-25. Richards further challenges the trial court's failure to review "bills, receipts, or any other legitimate supporting documentation about

pricing and depreciation, and without stating any reasons justifying the modification." ***Id.*** at 25.

The trial court stated in its opinion that "[a]t the writing of this Opinion, it was determined that the restitution should have been entered for $2,695 and it was by clerical error that an order was entered for $3,050. After consultation with Ms. Phillips (defense counsel), the Restitution order was correctly set at $2,695." Trial Court Opinion, 4/3/14, at 1. The trial court, however, did not provide any explanation or justification for the amount of restitution ordered.

At sentencing, the trial court expressly stated, "[r]eceipts will have to be provided […] and we're not an insurance policy, so this isn't replacement cost. This will be whatever -- I guess for lack of a better phrase -- depreciated value of these items would be." N.T., 9/25/13, at 27-28. The trial court further provided that "unless there's adequate documentation, it's kind of speculation, and we don't speculate." ***Id.*** at 28. A review of the record reveals no support for the Commonwealth's request or for the trial court's order. Even if the trial court relied upon the email that the Commonwealth attached to its motion for modification of restitution, there is no explanation for the restitution amount of $2,695. The value of the items listed in the email totals $2,974.87. Thus, the email does not provide the basis of the trial court's order.

"Although an award of restitution lies within the discretion of the [trial] court, it should not be speculative or excessive and we must vacate a restitution [o]rder which is not supported by the record." *In Interest of Dublinski*, 695 A.2d 827, 829 (Pa. Super. 1997) (citing *Commonwealth v. Balisteri*, 478 A.2d 5, 9 (Pa. Super. 1984)). In this case, the Commonwealth did not present any documentation supporting its request for restitution aside from the email listing items with an assigned value. This email does not provide any information as to where the pricing information was obtained or whether the prices listed reflect the replacement cost, which the trial court specifically prohibited, or the depreciated value. As a result, we conclude that the trial court's restitution order is not supported by the record.

Richards further argues, and we agree, that the trial court violated his due process rights when it substantially increased the amount of restitution owed without scheduling a hearing or giving Richards the opportunity to challenge the restitution evidence presented by the Commonwealth. Richards' Brief at 30. In its opinion, the trial court provided the following explanation:

> [T]he restitution portion of the sentence was 'left open' for 30 days to have a hearing unless the attorneys agreed to an amount. On the 30th day, the court's minute clerk, Ms. Buchewicz, received the Motion to Amend and personally called Ms. Phillips (defense counsel) to ask if the matter needed a hearing or if the amount was agreed to by the

> defendant. It is Ms. Buchewicz's specific recollection that Ms. Phillips agreed to the amendment and, as such, a hearing was not necessary. The Order was entered on October 30, 2013.

Trial Court Opinion, 4/3/14, at 3.

"It is black letter law in this jurisdiction that an appellate court cannot consider anything which is not part of the record in the case." *Commonwealth v. McBride*, 957 A.2d 752, 757 (Pa. Super. 2008) (citing *Commonwealth v. Martz*, 926 A.2d 514, 524-25 (Pa. Super. 2007)). There is no evidence in the record establishing that a phone conversation between the trial court's staff and counsel for Richards occurred, nor is there any evidence that counsel for Richards consented to the amount. Thus, this Court may not properly consider this information.

"[A]lthough it is mandatory under section 1106(c) to award full restitution, it is still necessary that the amount of the 'full restitution' be determined under the adversarial system with considerations of due process." *Atanasio*, 997 A.2d at 1183 (quoting *Commonwealth v. Ortiz*, 854 A.2d 1280, 1282 (Pa. Super. 2004)). In this case, the record reflects that Richards never received the opportunity to challenge the restitution evidence presented by the Commonwealth. We therefore conclude that the trial court violated Richards' due process rights. As a result, we vacate the restitution order and remand to the trial court for it to determine the amount of restitution owed by Richards.

Judgment of sentence affirmed. October 30, 2013 order of restitution vacated. Case remanded to the trial court for proceedings consistent with this Memorandum. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2014