834 A.2d 1127

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Taboo BRADLEY, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 2002.

Decided Oct. 28, 2003.

Dale E. Klein, for Taboo Bradley, Appellant.

Edward Michael Marsico, Francis T. Chardo, Harrisburg, for the Com. of PA., Appellee.

Before: ZAPPALA, and CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

Justice CASTILLE.

This Court granted discretionary review in this criminal appeal to address whether appellant's two prior armed robbery convictions arose from separate criminal transactions such that appellant was properly sentenced under what is commonly termed the "three strikes" provision of the Sentencing Code, 42 Pa.C.S § 9714(a)(2) (as amended December 20, 2000, effective in 60 days). For the reasons set forth below, we agree with the courts below that appellant's prior convictions arose from separate criminal transactions and, accordingly, appellant was properly given an enhanced sentence as a three strike offender. We therefore affirm the order of the Superior Court.

On September 15, 1999, a jury convicted appellant of escape, aggravated assault (two counts) and related offenses. The assaults occurred on January 28, 1999, when FBI Agent Charles Williams and Harrisburg City Police Officer Deborah Reigle attempted to arrest appellant on an escape charge. Rather than surrender, appellant put his vehicle into reverse and backed directly toward the officers, who had to leap out of the way of the oncoming vehicle in order to avoid being struck. Appellant rammed into Reigle's police cruiser and, when his own vehicle became disabled, appellant fled on foot. When appellant was later apprehended, he spat in the face of a third officer, stating, "you're lucky I didn't have my gun."

On October 13, 1999, a second jury convicted appellant in a matter involving unrelated charges of simple assault, terroristic threats and firearms offenses. These charges arose from appellant's conduct on January 27, 1999, when he had a confrontation with a woman in a bar during which he punched the victim in the face, pulled out a gun, pointed it in the victim's face and said, "I'll kill you bitch."

Appellant proceeded to a consolidated sentencing hearing on both cases on October 27, 1999. At the sentencing hearing, the Commonwealth introduced evidence proving that appellant had previously been convicted of two armed robberies in 1991 and argued that those robbery convictions constituted two prior crimes of violence arising from separate criminal transactions. The Commonwealth asserted that the assault of Officer Reigle, which was graded as a first degree felony, constituted a third crime of violence for which appellant should receive a mandatory minimum sentence of 25 years imprisonment pursuant to the "three strikes" law. In support of its contention, the Commonwealth introduced certified copies of the criminal indictments charging appellant with the 1991 robberies. In addition, the Commonwealth presented testimony concerning the circumstances of the prior offenses. Specifically, the Commonwealth introduced testimony that appellant and two co-defendants, John Straining and Charles Brown, robbed a person as he stood outside of the Maverick Steakhouse in Harrisburg at approximately 8:13 p.m. on the evening of February 7, 1991. *See* N.T. 10/27/1999 at 10–11, 16. Later that evening, at approximately 8:41 p.m., appellant and his two co-defendants robbed a second victim as she stood outside of Sisco's Pizza Shop which is also in Harrisburg. The distance between the two locations is 3.3 miles and, the investigating detective testified, it took him approximately seven minutes to drive that particular distance at a speed of up to 45 miles per hour. *Id.* at 16–17.

Appellant, for his part, argued that he should not be sentenced under the "three strikes" law because the 1991 robberies arose from a single criminal transaction. In support of this argument, appellant read into the record an excerpt of co-

defendant Straining's testimony at his joint trial with appellant and co-defendant Brown on the 1991 robbery charges. Straining testified that after the Maverick Restaurant robbery, the three confederates divided the money they had stolen and then drove to Sisco's. *Id.* at 37–38. Appellant also read into the record the portion of Brown's testimony from trial in which he testified that, as far as he could recall, Sisco's was the next place the three men went after committing the Maverick Restaurant robbery. *Id.* at 38.

The trial court concluded that the 1991 robbery convictions constituted two predicate crimes of violence arising from separate criminal transactions. Accordingly, the trial court held that the instant aggravated assault conviction involving Officer Reigle qualified as appellant's third crime of violence which triggered the "three strikes" provision. Consistently with that provision, the court sentenced appellant to a 25 to 50 year term of incarceration on this charge. The aggregate sentence imposed on all charges was 39 to 78 years of imprisonment. Appellant filed a motion to modify sentence, renewing his claim that the two prior robberies should be deemed a single transaction for purposes of Section 9714. The trial court denied the motion.

On appeal to the Superior Court, appellant renewed his claim that the trial court erred in sentencing him as a third strike offender because the 1991 robberies constituted a single criminal transaction. The Superior Court affirmed in an unpublished opinion, with Judge Cavanaugh concurring in the result only. The panel began its analysis of appellant's "three strikes" claim by noting that it was a challenge to the discretionary aspects of appellant's sentence and that such a claim may only be entertained by the appellate court when there is a substantial question that the sentence is not appropriate under the Sentencing Code as a whole. Superior Court slip op. at 5. The panel then observed that Pennsylvania courts have not defined the term "transaction" for purposes of the "three strikes" law. The panel noted, however, that the fourth edition of the Pennsylvania Sentencing Guidelines, which were

in effect at the time the "three strikes" provision was enacted,[1] had defined "transaction" as follows:

A transaction is a crime or crimes which were committed by an offender at a single time or in temporally continuous actions that are part of the same episode, event, or incident, or which are conspiracy and the object offense. "Spree" crimes are not part of the same transaction unless they occurred as continuous actions not separated in time by law-abiding behavior.

202 Pa.Code § 303.7(c) (amended effective June 13, 1997). Working from this definition, the Superior Court noted that the 1991 crimes were committed approximately 28 minutes apart and more than three miles apart. The temporal and geographical separation of the crimes, the panel reasoned, "constituted a break in criminal activity." Slip op. at 7. Thus, the Superior Court concluded that the crimes were separate criminal transactions. Accordingly, the court held that there was no substantial question as to the appropriateness of the sentence and affirmed the trial court's judgment of sentence. This Court granted discretionary review.

Appellant claims that the trial court erred in sentencing him under the "three strikes" law. Appellant agrees with the Superior Court that, in construing the term "transaction" in Section 9714, this Court should look to the definition of that term which was included in the fourth edition of the Sentencing Guidelines. Appellant contends that under this definition, the two robberies were a same transaction "spree crime:" *i.e.,* it was a continuous action that was not sufficiently separated in time by lawful conduct so as to comprise more than one criminal transaction. In support of this assertion, appellant notes that he received concurrent sentences of seven and one-half to fifteen years' imprisonment for the 1991 robbery convictions, a fact which suggests that the 1991 sentencing court viewed his crimes as arising from the same transaction.

1. The fourth edition of the Sentencing Guidelines became effective August 12, 1994. The three strikes provision was adopted by the General Assembly on October 11, 1995, and became effective 60 days thereafter.

In addition, appellant contends that the underlying facts of the incidents show that they comprised a single criminal transaction. Specifically, appellant asserts that immediately after he and his cohorts committed the first robbery, they divided the proceeds among themselves and then proceeded to the scene of the second robbery. Appellant argues that: "[t]hey never reached a point of safety whereby ending the first conspiracy and robbery. Nor did they ever resume their normal activities." Brief for Appellant at 10.

The Commonwealth responds that the 1991 robbery convictions arose from crimes that "were separated in time and space" and thus appellant was properly sentenced as a "three strikes" offender. The Commonwealth notes that the common meaning of "transaction" is "an act, process, or instance of transacting." Brief for Appellee at 3 (quoting Webster's Third New International Dictionary). The Commonwealth argues that the two robberies, which occurred twenty-eight minutes apart at different locations separated by over three miles, "constituted separate acts and, therefore, separate transactions." *Id.* at 3. The Commonwealth agrees with appellant that it is appropriate to look to the Sentencing Guidelines' definition of the word "transaction," but argues that, under that definition, appellant's two previous robberies were not a spree crime that occurred as a single continuous action, but rather were separated by sufficient time and distance to constitute a break in criminal activity.

At the outset, we note that if this appeal were a challenge solely to the discretionary aspects of appellant's sentence, this Court generally would lack jurisdiction to entertain the matter. *See* 42 Pa.C.S. § 9781(f) ("No appeal of the discretionary aspects of the sentence shall be permitted beyond the appellate court that has initial jurisdiction for such appeals."); *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, 622 (2002) ("[T]his Court lacks jurisdiction to consider challenges to the discretionary aspects of sentences that the Superior Court has already reviewed.") (Opinion Announcing Judgment of Court) (citations omitted); *Commonwealth v. Smith,* 543 Pa. 566, 673 A.2d 893, 895 (1996) ("It is clear that Section

9781(f) precludes us from reviewing the discretionary aspects of a sentence.") (citation omitted).

 We do not agree with the Superior Court, however, that appellant's specific claim is one sounding entirely in the discretionary aspects of his sentence. Appellant's contention that he was improperly sentenced as a three strike offender under Section 9714 of the Judicial Code, 42 Pa.C.S. § 9714, raises a question of statutory construction, which is a pure question of law. *Commonwealth v. Gilmour Manufacturing. Co.*, 573 Pa. 143, 822 A.2d 676, 679 (2003).[2] Moreover, if appellant's claim proved to have merit, it would implicate the legality of his sentence. "An illegal sentence is one that exceeds the statutory limits." *Commonwealth v. Hunter*, 768 A.2d 1136, 1144 n. 3 (Pa.Super.2001), *quoting Commonwealth v. Archer*, 722 A.2d 203, 209 (Pa.Super.1998) (*en banc*). Appellant was convicted of aggravated assault upon Officer Reigle under 18 Pa.C.S. § 2702(a)(2), which is classified as a felony of the first degree. *Id.* § 2702(b). The Crimes Code permits a sentence of no more than twenty years of imprisonment for a first-degree felony. *See* 18 Pa.C.S. § 1103(1). Thus, the 25 to 50 year sentence imposed by the trial court for this offense would exceed the statutory limit and be illegal unless the "three strikes" provision of Section 9714 applies. Under these circumstances, we conclude that appellant's claim implicates the legality of his sentence. Accordingly, he may raise the question as a matter of right and our jurisdiction over the claim is correspondingly secure. *See* 42 Pa.C.S. § 9781(a) ("The defendant or the Commonwealth may appeal as of right the legality of the sentence.").

The Pennsylvania General Assembly, like the United States Congress and the legislatures of many other states, has determined that recidivist violent offenders should face guaranteed and increasingly substantial periods of imprisonment. Section 9714 is aimed at accomplishing this goal. The "three strikes" provision of the statute addresses offenders who have been

2. Our review of questions of law is not deferential but *de novo*, and our scope of review is plenary. *Gilmour Manufacturing, supra; Stoner v. Stoner*, 572 Pa. 665, 819 A.2d 529, 530 n. 1 (2003).

150

convicted of two or more separate crimes of violence, and mandates that those offenders receive a minimum of 25 years of total confinement. The provision provides:

> Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. Proof that the offender received notice of or otherwise knew or should have known of the penalties under this paragraph shall not be required. Upon conviction for a third or subsequent crime of violence the court may, if it determines that 25 years of total confinement is insufficient to protect the public safety, sentence the offender to life imprisonment without parole.

42 Pa.C.S. § 9714(a)(2). A "crime of violence" includes, *inter alia*, aggravated assault as defined in 18 Pa.C.S. § 2702(a)(1) or (2), and robbery as defined in 18 Pa.C.S. § 3701(a)(1)(i), (ii), or (iii). 42 Pa.C.S. § 9714(g).[3]

 The term "transaction" is not defined in Section 9714 or elsewhere in the Sentencing Code. Nor are we aware of any

---

**3.** We note that, following appellant's sentencing in this matter, the General Assembly amended Section 9714 on December 20, 2000, effective in 60 days. The amendments removed provisions having to do with the presumption of high-risk dangerous offender. Subsection 9714(a)(2), which is at issue in this appeal, was not amended.

We also note that the Superior Court held in *Commonwealth v. Eddings*, 721 A.2d 1095, 1100 (Pa.Super.1998), *aff'd per curiam*, 565 Pa. 256, 772 A.2d 956 (2001), that under the version of Section 9714 in effect at the time of appellant's sentencing, only those prior convictions occurring within the seven-year period outlined in former subsection 9714(b)(2) may be considered for purposes of imposing the mandatory minimum sentence for a third crime of violence pursuant to the three strikes law. *See* 42 Pa.C.S. § 9714(b)(2) ("The previous conviction occurred within seven years of the date of the commission of the instant offense, except that any time during which the offender was incarcerated in any penitentiary, prison or other place of detention or on probation or parole shall not be considered in computing the relevant seven-year period . . . .") (repealed). In this case, where appellant was sentenced to a seven and one-half to fifteen year term of imprisonment for the 1991 crimes, it is undisputed that Section 9714(b)(2)'s recency requirement is satisfied.

decisional authority specifically interpreting the term for purposes of Section 9714. We turn, therefore, to settled principles of statutory construction. The object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(b). As a general rule, the best indication of legislative intent is the plain language of a statute. *See, Gilmour Manufacturing, supra*, 822 A.2d at 679. In construing the language of a statute, "words and phrases are to be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Words and phrases that have acquired a "peculiar and appropriate meaning," however, must be construed according to that peculiar and appropriate meaning. *Id.*

The word "transaction" arguably has acquired a "peculiar and appropriate meaning" in the sentencing context. The Sentencing Guidelines' definition quoted above was part of the guideline commentary in previous editions of the Guidelines and the Superior Court has repeatedly cited this definition in construing the term "transaction" for Sentencing Guidelines purposes. *See Commonwealth v. Kozarian*, 388 Pa.Super. 627, 566 A.2d 304, 306 (1989); *Commonwealth v. Taylor*, 362 Pa.Super. 408, 524 A.2d 942, 950 (1987); *Commonwealth v. Fries*, 362 Pa.Super. 163, 523 A.2d 1134, 1136, 1137–38 (1987).[4] The fourth edition of the Guidelines utilized this definition in the context of explaining prior record scores and deadly weapon enhancements. Specifically, the Guidelines provided that when imposing sentences for current multiple convictions, if the convictions arose out of the same transaction, the prior record score should be computed for the offense with the highest offense gravity score only and the prior record score for the remaining offenses should be zero. *See* 202 Pa.Code § 303.7(a) (prior to amendment effective June 13, 1997). Sim-

---

**4.** The current version of the Guidelines (the fifth edition promulgated on June 13, 1997) is offense-based rather than transaction-based and does not use the term. The glossary to the implementation manual for the current edition, however, retains the prior definition of the word. *See* Sentencing Guidelines Implementation Manual, Fifth Edition, at 275.

ilarly, the Guidelines stated that when a defendant has two or more prior convictions arising from the same transaction, only the most serious conviction offense from that transaction should count in the prior record score. *See* 202 Pa.Code § 303.7(b) (amended effective June 13, 1997). In addition, the Guidelines provided that where multiple crimes arise from the same transaction, the deadly weapon enhancement applies only once, and only to the conviction offense carrying the highest offense gravity score. *See* 202 Pa.Code § 303.9(a)(5) (amended effective June 13, 1997).

We recognize that the Sentencing Commission, while being a legislative agency,[5] is not the same as the General Assembly itself and, thus, the Commission's definition of a term does not necessarily reflect legislative intent with the same authority as a statutory definition. On the other hand, in establishing the Commission, the General Assembly reserved the power, subject to gubernatorial review as well, to reject the Sentencing Guidelines in their entirety.[6] That the several versions of the Guidelines adopted the same definition of "transaction" is at least some evidence of legislative acquiescence in the definition. That factor weighs in favor of employing a similar construction of the term "transaction" as used in Section 9714 of the Judicial Code. Because the subject of both Section 9714 and the Sentencing Guidelines on this point is similar; and because the Guidelines' definition is consonant with the plain meaning of the word transaction; and because we may presume that the General Assembly was aware of the meaning the term has been accorded in this area and did not disapprove of it; and because the parties are in

---

**5.** *See* 42 Pa.C.S. § 2151(a) ("The Pennsylvania Commission on Sentencing shall be established as an agency of the General Assembly....' "). *See also Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775 (1987) (describing structure of Commission).

**6.** *See* 42 Pa.C.S. § 2155(b) ("Subject to gubernatorial review pursuant to section 9 of Article III of the Constitution of Pennsylvania, the General Assembly may by concurrent resolution reject in their entirety any guidelines adopted by the commission...."). *See also Sessoms, supra* (describing power of Assembly to reject Guidelines and constitutional implications arising from that power).

agreement that our analysis should be informed by the Guidelines' definition, we will apply that definition here.

Before turning to that consideration, however, we note that the Sentencing Guidelines are not the only other instance in Pennsylvania criminal law where issues arise concerning whether multiple crimes should be treated as single or multiple episodes or transactions. For example, similar issues routinely arise under the compulsory joinder rule set forth in Section 110 of the Crimes Code. 18 Pa.C.S. § 110. Specifically, Section 110 prevents the Commonwealth from bringing a second prosecution if, *inter alia,* a former prosecution resulted in an acquittal or a conviction and the subsequent prosecution is for "any offense based on the same conduct or arising from the same criminal episode" and certain other factors, not relevant here, are also satisfied. *Id.* § 110(1)(ii). *See Commonwealth v. Spotz,* 562 Pa. 498, 756 A.2d 1139, 1157 (2000), *cert. denied,* 532 U.S. 932, 121 S.Ct. 1381, 149 L.Ed.2d 307 (2001). In interpreting the "same criminal episode" language in Section 110, this Court has looked to two factors: "1) the logical relationship between the acts, and 2) the temporal relationship between the acts." *Spotz,* 756 A.2d at 1157–58, *citing Commonwealth v. Bracalielly,* 540 Pa. 460, 658 A.2d 755, 761 (1995).

This Court's focus on logical and temporal relationships in the Section 110 context is, we believe, consistent with the considerations powering the Guidelines' definition of a criminal "transaction." The Guidelines' focus upon "a single time," "temporally continuous actions," and continuous actions "not separated in time by law-abiding behavior" echo the temporal proximity factor under Section 110, while their emphasis upon the "same" "episode," "event," "incident" or "transaction" is similar to the Section 110 focus upon the logical relationship between the acts. These similarities reaffirm the propriety of accepting the parties' invitation that we look to the Guidelines definition to assess whether appellant's two prior convictions involved a single or multiple "transaction."

■ Looking at the temporal and logical relationship between the two 1991 robbery convictions, we agree with the courts below that two separate criminal transactions were involved. The crimes were not committed "at a single time." Nor did the crimes constitute "temporally continuous actions that are part of the same episode, event or incident." Rather, the robberies were discrete criminal incidents occurring at different times and in different locations over three miles apart and involving two victims with no connection to one another. Neither robbery was essential to the successful commission of the other.

■ Nor does the mere fact that appellant and his confederates committed the same type of crime upon the two victims render them " '[s]pree' crimes . . . [that] occurred as continuous actions not separated in time by law abiding behavior." Appellant did not, for example, rob the first victim outside of the Maverick Steakhouse and then immediately rob a second victim at the same location. Instead, appellant and his accomplices completed the first robbery, split the proceeds and left the scene of this crime. The trio then drove to a different location three miles away. In another apparent crime of opportunity, the three then robbed their second victim outside a pizza shop. Although the offenses were committed in relatively short proximity to one another, they were not part of a single, continuous train of criminal events with no break in criminal activity. Accordingly, we hold that the courts below properly deemed them to be "separate criminal transactions" for purposes of the three strikes provision.

In a separate argument, appellant also contends that he should not have been subject to a "three strikes" sentence because his 1991 robbery convictions led to a single term of imprisonment. Appellant notes that his is not the situation of an offender who had two separate failed opportunities for rehabilitation before committing his "third strike." Appellant poses that Section 9714's three strikes provision is only intended to punish those violent offenders who are punished and released at least twice, but then continue to commit additional violent offenses. Appellant submits that treating his two

previous robbery convictions as two separate strikes violates legislative intent because he was given only one, and not two, opportunities in which to rehabilitate himself.

Appellant's argument interprets Section 9714 not according to its plain terms but according to what this Court has in other situations characterized as "the recidivist philosophy," *i.e.*, a philosophy suggesting that the "point of sentence enhancement is to punish more severely offenders who have persevered in criminal activity despite the theoretically beneficial effects of penal discipline." *Commonwealth v. Williams*, 539 Pa. 249, 652 A.2d 283, 284 (1994), *quoting Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990, 992 (1993). *See also Commonwealth v. Sutton*, 125 Pa.Super. 407, 189 A. 556, 558 (1937) ("It was not intended that the heavier penalty prescribed for the commission of a second offense should descend upon anyone, except the incorrigible one, who after being reproved, 'still hardeneth his neck.' If the heavier penalty prescribed for the second violation . . . is visited upon the one who has not had the benefit of the reproof of a first conviction, then the purpose of the statute is lost.") (quoted in both *Williams* and *Dickerson*). The recidivist philosophy, while a valid policy, is not the only valid sentencing policy, nor is it a constitutional principle or mandate: "the legislature is therefore free to reject or replace it when enacting recidivist sentencing legislation. If the legislature enacts a statute which clearly expresses a different application, the 'recidivist philosophy' possesses no authority which would override clearly contrary statutory language." *Williams*, 652 A.2d at 285. *See also Commonwealth v. Vasquez*, 562 Pa. 120, 753 A.2d 807, 811 (2000) (Cappy, J., concurring).

Appellant did not raise his recidivist philosophy-based argument at the sentencing hearing, in post-sentencing motions, or in his statement of matters complained of on appeal to the Superior Court. As a consequence, neither the trial court nor the Superior Court addressed the claim in their respective opinions. Since the claim was not properly raised and preserved below, we cannot reach it on this appeal. *See* Pa.R.A.P. 302(a); *Pentlong Corp. v. GLS Capital, Inc.*, 820

A.2d 1240, 1249 n. 17 (Pa.2003); *Commonwealth v. Jones*, 571 Pa. 112, 811 A.2d 994, 1004 (2002).

Because appellant's 1991 robbery convictions constituted two prior crimes of violence arising from separate criminal transactions, the trial court properly sentenced appellant under the "three strikes" provision. Accordingly, the order of the Superior Court is affirmed.

Justice EAKIN did not participate in the consideration or decision of this matter.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

Justice NIGRO files a concurring opinion.

Justice SAYLOR files a concurring opinion.

Justice NIGRO concurring.

While I agree with the majority's ultimate conclusion that Appellant Taboo Bradley was properly sentenced under the "three strikes" provision of the Sentencing Code, 42 Pa.C.S. § 9714(a)(2), I write separately to address what the majority calls Appellant's "recidivist philosophy-based argument." Op. at 1135.

Here, as the majority notes, Appellant was convicted of two armed robberies in 1991, and did not commit the aggravated assault at issue here until eight years later, in 1999. Given these circumstances, where Appellant had eight years to rehabilitate himself but opted not to, I agree with the majority that Appellant was properly given an enhanced sentence.

Such was not the case, at least in my view, in *Commonwealth v. Vasquez*, 562 Pa. 120, 753 A.2d 807, 808 (2000). There, an undercover police officer bought cocaine from the appellee on four separate occasions, but only arrested him after the last transaction. The appellee pled guilty to two counts of delivering cocaine and the trial court sentenced the appellee on the first count, and then applied 18 Pa. C.S. § 7508(a)(3)(i), which enhances a defendant's sentence if he

has been convicted of another drug trafficking offense at the time of his sentencing, to the second count. Notwithstanding the fact that the appellee's first and second count arose from a single arrest, a majority of this Court held on appeal that the appellee had properly been sentenced pursuant to the sentencing enhancement provision at § 7508(a)(3)(i). I dissented, primarily because I believed that a sentencing enhancement provision should not apply to defendants, such as the appellee in *Vasquez*, who have not been given a chance to rehabilitate themselves. *Id.* at 812.

Unlike the appellee in *Vasquez*, however, Appellant did in fact have an adequate opportunity to rehabilitate himself given that a period of eight years lapsed between his first two convictions and his third conviction. As such, I agree with the majority that Appellant was properly sentenced under the three-strikes law, and I am therefore able to join in the result reached by the majority.

Justice SAYLOR concurring.

Since substantial aspects of the majority's reasoning are predicated on waiver by and/or acquiescence of Appellant respecting debatable legal points, it is difficult to discern the extent to which the decision is meant to control future arguments concerning, in particular, the relevance of the Sentencing Commission's regulations, or the recidivist philosophy, to interpretation of the Three Strikes Law. Thus, while I concur in the disposition of this appeal in light of Appellant's presentation, I maintain reservations concerning undeveloped counterarguments, particularly the position that ambiguity in the General Assembly's use of the phrase "separate criminal transactions" entitles defendants who may be subject to the Three Strikes Law to the benefit of the rule of lenity, *see* 1 Pa.C.S. § 1928(b)(1) (providing that the provisions of a penal statute be strictly construed); *Commonwealth v. Lassiter*, 554 Pa. 586, 593, 722 A.2d 657, 660 (1998) (opinion announcing the judgment of the court), and, correspondingly, that the recidivist philosophy should inform the Court's interpretation of the statute. *See generally Commonwealth v. Dickerson*, 533 Pa.

294, 299, 621 A.2d 990, 992 (1993) (applying recidivist philosophy in addressing the pre–1995 version of Section 9714 and describing the rule of construction as premised on the theory that sentence enhancement is intended to punish more severely offenders who, after being reproved, continue to engage in criminal activity, and that the heavier penalty for a second conviction should not be "visited upon the one who has not had the benefit of the reproof of a first conviction."). Notably, the legislative history reflects that at least some members of the General Assembly believed that the statute would apply only where a defendant had been subject to both a first and second strike under the statute. *See generally* Legis. J.—Senate at 255 (Sept. 18, 1995) (comments of Senator Greenleaf) (explaining that, for the third strike provision to apply, the defendant would be in his late 20s or early 30s because of having served the mandatory sentences imposed under the first and second strike provisions); *accord id.* at 265 (Sept. 19, 1995); Legis. J.—House at 414 (Oct. 3, 1995). Moreover, other jurisdictions are divided concerning how to treat convictions arising out of spree type crimes under their respective habitual offender statutes, *see generally* Annotation, *Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes,* 7 A.L.R.5th §§ 2–5 (2003) (collecting cases),[1] further suggesting that such relevant counterarguments should not be dismissed out of hand for purposes of future cases.

I also would not consider the meaning of separate criminal transactions for purposes of Section 9714 in relation to the "same criminal episode" language underlying the compulsory

---

1. For example, courts in other jurisdictions have focused upon: the location and time between the offenses, the number of victims involved, the existence of sequential docket numbers, and whether the defendant entered guilty pleas on the same date, was represented by the same attorney, and received concurrently imposed sentences. *See, e.g., Chronological or Procedural Sequence of Former Convictions as Affecting Enhancement of Penalty Under Habitual Offender Statutes,* 7 A.L.R.5th at § 2b. Here, although the crimes involved different victims and separate locations, the time between the crimes was relatively brief, common issues of law and fact existed, the charges were consolidated, Appellant pleaded guilty to the offenses at the same time, and he received concurrent terms of incarceration.

joinder rule in Section 110 of the Crimes Code, 18 Pa.C.S. § 110, given the substantially different aims of the statutes. *Accord Commonwealth v. Fries*, 362 Pa.Super. 163, 174, 523 A.2d 1134, 1139 (1987) (concluding that reliance upon Section 110 was misplaced in interpreting what constitutes separate criminal transactions under the Sentencing Guidelines in light of the differing purposes). Finally, I am not fully in alignment with the substantive Section 110 analysis offered by the majority relative to this case.[2]

**2.** Under Section 110, crimes are treated as arising from the same criminal episode where there is a temporal and logical relationship, with the latter requirement focusing upon the existence of common issues of law and fact. *See Commonwealth v. Hude*, 500 Pa. 482, 491–92, 458 A.2d 177, 181–82 (1983). In this case, the crimes were separated by only eighteen minutes. Moreover, shared issues of law and fact arguably existed, as the crimes were perpetrated by the same co-defendants, involved identical offenses, including conspiracy, and were subject to a single investigation by the same detective. In addition, evidence of one offense would have been admissible in the trial of the other to establish, *inter alia*, identity, motive, and intent. *See generally* Pa.R.E. 404(b)(2) (providing for the admission of other crimes evidence). Indeed, in apparent recognition of such circumstances, the offenses were consolidated and charged sequentially as 1625 and 1625–A in the criminal information. *See generally* Pa.R.Crim.P. 563 (governing joinder of offenses).