J-E02004-20

2021 PA Super 166

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID SIMMONS | : | |
| | : | |
| Appellant | : | No. 2461 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 18, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0004160-2017

BEFORE:  BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J.,
DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

CONCURRING AND DISSENTING OPINION BY BOWES, J.:

**FILED AUGUST 18, 2021**

I agree with the learned Majority that the parole portion of Appellant's

sentence must be vacated and remanded so that Appellant can be

recommitted to serve parole back-time.[1]  However, I respectfully disagree that

the probation should be reimposed.  The Majority's interpretation of 42 Pa.C.S.

§ 9771 upends forty years of unchallenged precedent permitting the

---

[1] Upon revocation of parole, the only sentencing option available is recommitment to serve the balance of the prison term initially imposed. ***See Commonwealth v. Kalichak***, 943 A.2d 285, 290 (Pa.Super. 2008). However, here, the sentencing court imposed a new sentence of incarceration. Since there is no authority for a parole-revocation court to impose a new penalty, we agree with the Majority that the parole portion of Appellant's sentence should be vacated and remanded for resentencing. ***See Commonwealth v. Bischof***, 616 A.2d 6, 10 (Pa.Super. 1992) (reversing and remanding for resentencing after the parole revocation court modified an appellant's sentence instead of recommitting him to serve the balance of his sentence).

anticipatory revocation of an order of probation when a defendant commits a new crime. Starting with **Commonwealth v. Wendowski**, 420 A.2d 628 (Pa.Super. 1980), our courts have repeatedly construed § 9771 as providing that a defendant may violate the conditions of a probationary order by committing a new crime any time between sentencing and the completion of the maximum period of probation. To my mind, the doctrine of *stare decisis* and the presumption of legislative acquiescence warrant maintaining this long-standing interpretation of Pennsylvania law. Accordingly, I dissent.

As the Majority explains, statutory construction is a pure question of law, which we review *de novo*. **Commonwealth v. Cousins**, 212 A.3d 34, 38 (Pa. 2019). "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). We first look to the plain language of the statute, construing the words according to their common usage to discern the legislature's intent. **See** 1 Pa.C.S. § 1921(a), (b); **Commonwealth v. Foster**, 214 A.3d 1240, 1247 (Pa. 2019). Importantly, the plain meaning of a word "does not depend upon its form, but upon the intention of the Legislature, to be ascertained from a consideration of the entire act, its nature, its object, and the consequences that would result from construing it one way or the other." **MERSCORP, Inc. v. Del. Cty.**, 207 A.3d 855, 866 (Pa. 2019) (citation and internal quotations omitted).

We look beyond the plain meaning of the statute only where the words of the statute are ambiguous or not explicit. ***See*** 1 Pa.C.S. § 1921(c). A statutory text is ambiguous if it is susceptible to two or more reasonable interpretations. ***See Commonwealth v. McClelland***, 233 A.3d 717, 734 (Pa. 2020). Once a court concludes that the statutory language is ambiguous, it turns to the canons of statutory construction to determine the intended meaning of the relevant language. ***See*** 1 Pa.C.S. § 1921(c); 1 Pa.C.S. § 1922.

Section 9771 addresses the termination, modification, and revocation of probation and it provides as follows:

(a) General rule. – The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

(b) Revocation. – The court may revoke **an order of probation** upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

(c) Limitation on sentence of total confinement. – The court shall not impose a sentence of total confinement upon revocation unless it finds that:

(1) the defendant has been convicted of another crime; or

(2) the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

(3) such a sentence is essential to vindicate the authority of the court.

(d) Hearing required. – There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation. Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S. § 9771 (emphasis added).[2]

The Majority concludes that the plain meaning of § 9771 permits revocation of probation only after a defendant has begun serving the probationary portion of his sentence. Specifically, the Majority focuses upon § 9771(b), which states that "[t]he court may revoke an order of probation upon proof of the violation of specified conditions of the probation." The Majority reads § 9771(b) in tandem with 42 Pa.C.S. § 9721(a), which authorizes a trial court to impose probation "consecutively or concurrently." Since probation can only be imposed "consecutively or concurrently" pursuant to 42 Pa.C.S. § 9721(a), the Majority concludes that the "specified conditions" of a probation order set to run consecutively to a separate term of incarceration cannot take effect until the defendant begins serving the probationary portion of his sentence. The Majority found that "[t]his view is

_____

[2] The General Assembly amended the language of subsections (a) and (b) in December of 2019, which now allow the court to alter the terms of an order of probation "at any time" if it finds "that a person presents an identifiable threat to public safety." 42 Pa.C.S. § 9771(a). The legislature also added language to § 9771(b) to allow the Commonwealth "to file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence." 42 Pa.C.S. § 9771(b). These changes were made after the imposition of Appellant's sentence in this case and are not pertinent to this appeal.

mandated by the plain language of the statutes. Indeed, any other view is statutorily untenable." Majority Opinion at 19. I must respectfully disagree with this proffered statutory interpretation.

From the outset, I emphasize that the Majority's analysis overlooks an unbroken line of Pennsylvania precedent interpreting the phrase "order of probation" under § 9771 much differently in the revocation context. This Court has consistently held that the order of probation itself may be revoked at any time after sentencing and before the maximum period of probation has elapsed. *See Commonwealth v. Miller*, 516 A.2d 1263, 1265 (Pa.Super. 1986) ("To suggest . . . that a defendant is free to commit unlimited additional crimes without in any way impairing or endangering a previously imposed sentence of probation merely because the probationary period is not commenced is to suggest an absurdity in the statute which this Court is not prepared to create."). Accordingly, our case law treats the probationary and incarceration aspects of a defendant's sentence as intertwined parts of the same sentencing scheme. *Commonwealth v. Infante*, 63 A.3d 358, 365 (Pa.Super. 2013) ("[U]pon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing . . . . the trial court is limited only by the maximum sentence that it could have imposed originally"); *see also Commonwealth v. Goldhammer*, 517 A.2d 1280, 1283 (Pa. 1986) ("When a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing plan.").

This long-standing interpretation jettisoned by the Majority[3] is also supported by the language of § 9771(b) when viewed in tandem with 42 Pa.C.S. § 9754(b)[4], which states that the sentencing alternatives available to the revocation court are the same that were available to the initial sentencing court. *See* 42 Pa.C.S. § 9771(b). By imposing the conditions of a defendant's probation at the original sentencing, a defendant is put on notice as to what the specific conditions of his probation are and that, if he fails to lead a "law-abiding life" from that day forward, he faces possible parole and probation revocation. *See Commonwealth v. Shires*, 240 A.3d 974, 977-80 (Pa.Super. 2020) (examining the interplay between the crimes code and prisons and parole code, before holding that the only pertinent conditions of a defendant's probation for revocation purposes were the conditions imposed as part of his original sentence).

I also disagree with the Majority's overly-strict interpretation of § 9771(b) to the effect that revocation is sanctioned only "upon proof of the violation of specified conditions of probation," which are enumerated in §

---

[3] The Majority's interpretation arises from reading the words "an order of probation" in isolation. However, our precedent mandates that we "read them with reference to the context in which they appear." *MERSCORP, Inc. v. Del. Co.*, 207 A.3d 855, 867-69 (Pa. 2019) (discerning the meaning of a mortgage assignment statute by viewing it in the context of how it had been interpreted by Pennsylvania Courts for over a hundred years). Accordingly, I would not be so dismissive of an interpretation that has influenced criminal sentencing decisions for decades.

[4] "The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b).

9754(c) and listed in the Majority Opinion. Since specified conditions of probation run coextensively with the term of probation, the Majority posits that the plain-meaning of "order of probation" cannot become effective for revocation purposes until a defendant begins serving probation. **See** Majority at 22-24. However, this view ignores 42 Pa.C.S. § 9754(b), which our Supreme Court has held provides additional grounds for revoking a defendant's probation. **See Foster**, **supra** at 1250.

In **Foster**, our Supreme Court applied the canons of statutory construction to § 9771 to discern whether acts not specified in § 9754(c) could still constitute a probation violation. **Id**. Our High Court found that, when read together, § 9771(b) and § 9754(b) create a construct so that probation revocation can take place after a violation of a "specific condition" **or** the commission of a new crime. **Id**. at 1250 ("In other words, a court may find a defendant in violation of probation only if the defendant has violated one of the 'specific conditions' of probation included in the probation order or has committed a new crime."). Thus, the specific conditions of probation flow from the general condition of probation that a defendant leads "a law-abiding life." **Id**. at 1250; **see also** 42 Pa.C.S. § 9754(b). The **Foster** Court imported the general condition of law-abidingness into the same sentence of the section at issue here, even though that condition was not specified in the actual sentencing order, which, under the Majority's approach, § 9771(b) plainly requires. **See** 42 Pa.C.S. § 9771(b) ("The court may revoke an order of probation upon proof of the violation of specified conditions of the

probation."). Notably, ***Foster*** clarified that "specified conditions" includes the general condition of law-abidingness. Accordingly, ***Foster*** serves as a prime example that the language of § 9771(b) need not be construed as strictly as the Majority view would impose.

Concededly, the question of anticipatory revocation was not before the ***Foster*** Court. However, a defendant can commit a new crime at any time after a split sentence is imposed, regardless of which portion of that sentence he is then serving. Since the general and specific conditions are included in the probation order, a defendant is placed on notice at the sentencing hearing of the penalties associated with committing a new crime. Thus, the ***Foster*** Court's interpretation of § 9771(b) plainly supports ***Wendowski's*** construction of § 9771: commission of a new crime any time after imposition of sentence may serve as the basis for revocation of probation.

Given the existence of these cases that espouse an equally reasonable statutory interpretation compared to the majority view, I would find that § 9771 is ambiguous, at best, on this point. Therefore, I would turn to additional tools of statutory construction, which overwhelmingly support the affirmation of established case law interpreting § 9771. ***See*** 1 Pa.C.S. § 1921(c).[5]

---

[5] To discern legislative intent when faced with an ambiguous statute, the factors to consider include, but are not limited to: "(1) The occasion and necessity for the statute; (2) The circumstances under which it was enacted; (3) The mischief to be remedied; (4) The object to be attained; (5) The former law, if any, including other statutes upon the same or similar subjects; (6) The consequences of a particular interpretation; (7) The contemporaneous legislative history; [and] (8) Legislative and administrative interpretations of such statute." 1 Pa.C.S. § 1921(c).

First, pursuant to 1 Pa.C.S. § 1922(c)(1) we are permitted to examine the statutory consequences of a particular interpretation. *See* 1 Pa.C.S. § 1922(c)(1) (presuming that the legislature did not intend an absurd or unreasonable result, we are permitted to examine the practical consequences of a particular interpretation). Moreover, in accordance with 1 Pa.C.S. § 1922(c)(5), we presume that the general assembly intended to favor the public interest over any private interest. *See* 1 Pa.C.S. § 1922(c)(5) ("[T]he General Assembly [presumptively] intends to favor the public interest as against any private interest.").

Here, an examination of the consequences of the Majority's approach highlights its practical unworkability and inconsistency with important public policy interests. The ***Wendowski*** court aptly addressed the implicated public policy concerns, explaining:

> If, at any time before the defendant has completed the maximum period of probation, or **before he has begun service of his probation**, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public, or the defendant, the court could revoke or change the order of probation. A defendant on probation has no contract with the court. He is still a person convicted of [a] crime, and the expressed intent of the court to have him under probation beginning at a future time does not 'change his position from the possession of a privilege to the enjoyment of a right.'

***Wendowski***, ***supra*** at 630 (emphasis in original) (quoting ***James v. United States***, 140 F.2d 392, 394 (5th Cir. 1944) (Waller, J., concurring)).

Indeed, probation is a "privilege" not a "right." **Id**. Interpreting the statute as the Majority suggests would be turn this notion on its head, changing probation from a "privilege" to a "right" that must be honored no matter how many additional crimes the defendant commits between the imposition of his sentence and the commencement of the probationary term. For example, a parolee who commits a crime on the last day of his term of incarceration could never face any probationary consequences for that crime, since it was committed outside of the probationary portion of his sentence. In other words, once the amount of back time left on his sentence neared completion, the defendant would have license to break the law while resting assured of an irrevocable entitlement to probation. Although the defendant had unequivocally demonstrated the continuing inability to abide by the law, the probation revocation court would have to grant him the opportunity to commit yet another crime during the probationary portion of his split sentence before the court could act. This result topples the long-standing recognition of probation as a "privilege" and discourages courts' utilization of it as an important deterrent and rehabilitative tool, which, when used in combination with parole revocation, protects the public.[6]

---

[6] Indeed, what court will now opt to impose a split sentence that cannot be altered no matter how terribly the defendant behaves during the confinement portion of his sentence rather than just sentencing the defendant to a lengthier maximum term of imprisonment to ensure that the privilege of less-intense supervision is not abused?

- 10 -

Second, the doctrines of *stare decisis* and legislative acquiescence support upholding **Wendowski** and its progeny. For over forty years, we have explicitly authorized revocation courts to anticipatorily revoke probation based on our interpretation of § 9771. ***See***, ***e.g. Commonwealth v. Allhouse***, 33 A.3d 39 (Pa.Super. 2011); ***Commonwealth v. Hoover***, 909 A.2d 321, 323-24 (Pa.Super. 2006); ***Commonwealth v. Ware***, 737 A.2d 251, 253-54 (Pa.Super. 1999); ***Miller***, ***supra*** at 1265-66; ***Commonwealth v. Dickens***, 475 A.2d 141, 152-53 (Pa.Super. 1984); ***Wendowski***, ***supra*** at 630. Thus, it has been clearly established through precedent that "a court may revoke a probationary sentence at any time prior to its completion if the defendant demonstrates to the court that he is unworthy of probation." **Wendowski** at 630. This precedent provided the legal landscape upon which trial courts chose probationary tails from among the sentencing options available to them. I think it is beyond cavil that knowledge that the probation could be revoked at any time upon a defendant's commission of a new crime informed some of these courts' decisions, and that sentencing schemes may well have been structured quite differently had the courts been aware of the constraint that the Majority now imposes.

Furthermore, since **Wendowski**, the legislature has amended § 9771 twice. ***See*** Commonwealth's brief at 16. However, neither amendment has addressed the operative language at issue here. Therefore, the legislature appears to have acquiesced in the long line of precedent borne of the **Wendowski** holding that the conditions of probation begin at the time

- 11 -

sentence is imposed. **See** Commonwealth's brief at 16; **see also**, **e.g. Commonwealth v. Batts**, 163 A.3d 410, 459-60 (Pa. 2017) (**Batts II**) (Finding legislative acquiescence to the **Commonwealth v. Batts**, 66 A.3d 286, 295 (Pa. 2013) (**Batts I**) Court's interpretation of 18 Pa.C.S. § 1102, since "[d]espite the passage of four years since we issued **Batts I**, the General Assembly has not passed a statute addressing the sentencing of juveniles convicted of first-degree murder pre-**Miller** [**v. Alabama**, 567 U.S. 460 (2012)], nor has it amended the pertinent provisions that were severed in **Batts I**."); **see also**, **e.g. Commonwealth v. Bradley**, 834 A.2d 1127, 1133 (Pa. 2003) (considering the "three strikes" provision of the sentencing code and finding the fact that "several versions of the [sentencing] Guidelines adopted the same definition of 'transaction'" as "at least some evidence of legislative acquiescence in the definition.").

The Majority discusses the Commonwealth's *stare decisis* and legislative arguments, acknowledging that the Superior Court has reaffirmed **Wendowski** many times and conceding that the doctrine of *stare decisis* can still apply in situations, such as here, where the Pennsylvania Supreme Court has never ruled on the issue. **See** Majority at 24-25. Nevertheless, the Majority gives short shrift to the Commonwealth's position, dismissing and departing from established precedent because it finds that precedent relied on an erroneous interpretation of § 9771 which ran "contrary to the plain language of the statutes" for decades. **Id**. at 27.

While I do not deem our Court's repeatedly consistent interpretation of § 9771 and the legislature's acquiescence to that interpretation as dispositive of the question of statutory interpretation, neither would I deem it insignificant as the Majority suggests. Legal precedent exists to ensure "the evenhanded, predictable, and consistent development of legal principles." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). Section 9771 is not obscure or rarely applied, and the General Assembly has had forty years to undo the holding in *Wendowski* if it thought the holding incorrect or that defendants who commit new crimes while serving parole deserved more lenient treatment. In circumstances such as here, where the legislature has declined the opportunity to clarify an ambiguous text, adherence to our precedent promotes notions of fairness and stability. Accordingly, I would not unsettle forty years of established jurisprudence. Instead, I would leave any amendment of § 9771 to the General Assembly.

Therefore, while I agree that the parole portion of Appellant's sentence was imposed illegally, I respectfully dissent from the Majority's decision to vacate Appellant's entire judgment of sentence on the grounds that the court did not possess the authority to anticipatorily revoke Appellant's probation.

Judge Murray joins this dissenting opinion.

Judge Shogan did not participate in the consideration or decision of this matter.