J-E02003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ACEY REAVIS | : | |
| | : | |
| Appellant | : | No. 1360 EDA 2018 |

Appeal from the Judgment of Sentence April 13, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-0000919-2016

BEFORE:  BENDER, P.J.E., BOWES, J., SHOGAN, J., LAZARUS, J., OLSON, J.,
DUBOW, J., KUNSELMAN, J., MURRAY, J., and McCAFFERY, J.

DISSENTING MEMORANDUM BY BOWES, J.:        **FILED AUGUST 18, 2021**

I respectfully disagree with the learned Majority's decision to interpret 42 Pa.C.S. § 9771 in a way which upends forty years of unchallenged precedent permitting the anticipatory revocation of an order of probation when a defendant commits a new crime or violates the specific conditions of his probation.  Starting with ***Commonwealth v. Wendowski***, 420 A.2d 628 (Pa.Super. 1980), our courts have repeatedly construed § 9771 as providing that a defendant may violate the conditions of a probationary order by committing a new crime or by violating the specific conditions of his probation any time between sentencing and the completion of the maximum period of probation.  As set forth at length in my dissent in ***Commonwealth v. Simmons***, ___ A.3d ___ (Pa.Super. 2021) (*en banc*) (Bowes, J.) (dissenting opinion), the doctrine of *stare decisis* and the presumption of legislative

acquiescence warrant maintaining this long-standing interpretation of Pennsylvania law. Accordingly, I dissent.

Statutory construction is a pure question of law, which we review *de novo*. ***Commonwealth v. Cousins***, 212 A.3d 34, 38 (Pa. 2019). We first look to the plain language of the statute, construing the words according to their common usage to discern the legislature's intent. ***See*** 1 Pa.C.S. § 1921(a), (b); ***Commonwealth v. Foster***, 214 A.3d 1240, 1247 (Pa. 2019). We look beyond the plain meaning of the statute only where the words of the statute are ambiguous or not explicit. ***See*** 1 Pa.C.S. § 1921(c). A statutory text is ambiguous if it is susceptible to two or more reasonable interpretations. ***See Commonwealth v. McClelland***, 233 A.3d 717, 734 (Pa. 2020). Once a court concludes that the statutory language is ambiguous, it turns to the canons of statutory construction to determine the intended meaning of the relevant language. ***See*** 1 Pa.C.S. § 1921(c); 1 Pa.C.S. § 1922.

Section 9771 addresses the termination, modification, and revocation of probation and it provides as follows:

(a) General rule. – The court may at any time terminate continued supervision or lessen or increase the conditions upon which an order of probation has been imposed.

(b) Revocation. – The court may revoke **an order of probation** upon proof of the violation of specified conditions of the probation. Upon revocation the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing, due consideration being given to the time spent serving the order of probation.

(c)     Limitation on sentence of total confinement. – The court shall not impose a sentence of total confinement upon revocation unless it finds that:

    (1)     the defendant has been convicted of another crime; or

    (2)     the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned; or

    (3)     such a sentence is essential to vindicate the authority of the court.

(d)     Hearing required. – There shall be no revocation or increase of conditions of sentence under this section except after a hearing at which the court shall consider the record of the sentencing proceeding together with evidence of the conduct of the defendant while on probation.  Probation may be eliminated or the term decreased without a hearing.

42 Pa.C.S. § 9771 (emphasis added).[1]

Adopting its analysis in ***Commonwealth v. Simmons***, ____ A.3d ____ (Pa.Super. 2021) (*en banc*), and extending its holding to cover technical probation violations, the Majority concludes that the plain meaning of § 9771 permits revocation of probation only after a defendant has actually begun serving the probationary portion of his sentence.   The ***Simmons*** Court focused upon § 9771(b), which states that "[t]he court may revoke an order

_____

[1] The General Assembly amended the language of subsections (a) and (b) in December of 2019, which now allow the court to alter the terms of an order of probation "at any time" if it finds "that a person presents an identifiable threat to public safety."  42 Pa.C.S. § 9771(a).  The legislature also added language to § 9771(b) to allow the Commonwealth "to file notice at any time prior to resentencing of the Commonwealth's intention to proceed under an applicable provision of law requiring a mandatory minimum sentence."  42 Pa.C.S. § 9771(b).  These changes were made after the imposition of Appellant's sentence in this case and are not pertinent to this appeal.

of probation upon proof of the violation of specified conditions of probation." The **Simmons** Court read § 9771(b) in tandem with 42 Pa.C.S. § 9721(a), which authorizes a trial court to impose probation "consecutively or concurrently." Since probation can only be imposed "consecutively or concurrently" pursuant to 42 Pa.C.S. § 9721(a), the **Simmons** Court concluded that the "specified conditions" of a probation order set to run consecutively to a separate term of incarceration cannot take effect until the defendant begins serving the probationary portion of his sentence. The **Simmons** Court found that "[t]his view [was] mandated by the plain language of the statutes. Indeed, any other view is statutorily untenable." **Simmons**, slip op. at 19. Again, I must respectfully disagree with this statutory interpretation.

From the outset, I emphasize that **Simmons**'s analysis overlooks an unbroken line of Pennsylvania precedent interpreting the phrase "order of probation" under § 9771 much differently in the revocation context. This Court has consistently held that the order of probation itself may be revoked at any time after sentencing and before the maximum period of probation has elapsed. **See Commonwealth v. Hoover**, 909 A.2d 321, 323-24 (Pa.Super. 2006) (anticipatorily revoking probation after the appellant violated the conditions of his work release); **see also Commonwealth v. Miller**, 516 A.2d 1263, 1265 (Pa.Super. 1986) ("To suggest . . . that a defendant is free to commit unlimited additional crimes without in any way impairing or endangering a previously imposed sentence of probation merely because the

- 4 -

probationary period is not commenced is to suggest an absurdity in the statute which this Court is not prepared to create."). Accordingly, our case law treats the probationary and incarcerations aspects of a split sentence as intertwined parts of the same sentencing scheme. *See Commonwealth v. Infante*, 63 A.3d 358, 365 (Pa.Super. 2013) ("[U]pon revocation, the sentencing alternatives available to the court shall be the same as the alternatives available at the time of initial sentencing . . . the trial court is limited only by the maximum sentence that it could have imposed originally"; *see also Commonwealth v. Goldhammer*, 517 A.2d 1280, 1283 (Pa. 1986) ("When a defendant challenges one of several interdependent sentences, he, in effect, challenges the entire sentencing plan.").

The interpretation overturned by *Simmons*, and extended to technical violations by the Majority here, is also supported by the language of § 9771(b) when viewed in tandem with 42 Pa.C.S. § 9754(b),[2] which states that the sentencing alternatives available to the revocation court are the same that were available to the initial sentencing court. *See* 42 Pa.C.S. § 9771(b). By imposing the conditions of a defendant's probation at the original sentencing, a defendant is put on notice as to what the specific conditions of his probation are and that, if he fails to comply with those conditions from that day forward, he faces possible parole and probation revocation. *See also Commonwealth*

---

[2] "The court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b).

***v. Shires***, 240 A.3d 974, 977-80 (Pa.Super. 2020) (examining the interplay between the crimes code and prisons and parole code, before holding that the only pertinent conditions of a defendant's probation for revocation purposes were the conditions imposed as part of his original sentence).

For example, Appellant was put on notice at his original sentencing hearing that he was required to submit to random drug screens and comply with mental health treatment. It is undisputed that, while on parole, Appellant violated the specific conditions of his parole and probation, when he repeatedly tested positive for drugs and failed to attend his court-ordered mental health treatment. ***See*** 42 Pa.C.S. 9771(b) (requiring proof of the violation of specified conditions of probation before probation can be revoked). Thus, § 9771(b) empowered the court with the authority to revoke Appellant's probation, reverting to the same sentencing alternatives that were available at the time of the initial sentencing. ***Id***. A sentence of total confinement could be imposed as long as the revocation court found that Appellant had committed another crime, that his conduct indicated he was likely to commit another crime if not imprisoned, or if incarceration was necessary to vindicate the authority of the court. ***See*** 42 Pa.C.S. 9771(c).

Thus, I disagree with the Majority's overly-strict interpretation of § 9771(b) to the effect that the term "order of probation" can only be revoked after the probation portion of a split sentence commences. Majority Memorandum at 2. Given the existence of this parallel line of cases espousing an equally reasonable statutory interpretation, I would find that § 9771 is

ambiguous, at best, on this point. Therefore, I would turn to the tools of statutory construction, which overwhelmingly support the affirmation of established case law interpreting § 9771. *See* 1 Pa.C.S. § 1921(c).

First, an examination of the consequences of the *Simmons*'s and Majority's approach highlights its practical unworkability and inconsistency with important public policy interests. *See* 1 Pa.C.S. § 1922(c)(1) (presuming that the legislature did not intend an absurd or unreasonable result, we are permitted to examine the practical consequences of a particular interpretation); *see also* 1 Pa.C.S. § 1922(c)(5) ("[T]he General Assembly [presumptively] intends to favor the public interest as against any private interest."). The *Wendowski* court aptly addressed the implicated public policy concerns, explaining:

> If, at any time before the defendant has completed the maximum period of probation, or **before he has begun service of his probation**, he should commit offenses of such nature as to demonstrate to the court that he is unworthy of probation and that the granting of the same would not be in subservience to the ends of justice and the best interests of the public, or the defendant, the court could revoke or change the order of probation. A defendant on probation has no contract with the court. He is still a person convicted of [a] crime, and the expressed intent of the court to have him under probation beginning at a future time does not 'change his position from the possession of a privilege to the enjoyment of a right.'

*Wendowski*, *supra* at 630 (emphasis in original) (quoting *James v. United States*, 140 F.2d 392, 394 (5th Cir. 1944) (Waller, J., concurring)).

Indeed, probation is a "privilege" not a "right." *Id*. Interpreting the statute as *Simmons* suggests would be turn this notion on its head, changing

probation from a "privilege" to a "right" that must be honored no matter how many crimes a defendant commits between imposition of sentence and the commencement of the probationary term. For example, a parolee who commits a crime on the last day before his term of incarceration concluded could never face any probationary consequences for that crime, since it was committed outside of the probationary portion of his sentence. In other words, once the amount of back time left on his sentence got short enough, the defendant would have license to break the law while resting assured of an irrevocable entitlement to probation. Although the defendant had unequivocally demonstrated the continuing inability to abide by the law, the probation revocation court would have to give him the opportunity to commit yet another crime during the probationary portion of his split sentence before the court could act. This result topples the long-standing recognition of probation as a "privilege" and discourages courts' utilization of it as an important deterrent and rehabilitative tool, which, when used in combination with parole revocation, protects the public.[3]

Further, by restricting a court's ability to adjust probation conditions for defendants who fail to comply with the specific conditions of probation before additional crimes are committed, we hinder the court's ability to reassess and

---

[3] Indeed, what court will now opt to impose a split sentence that cannot be altered no matter how terribly the defendant behaves during the confinement portion of his sentence rather than just sentencing the defendant to a lengthier maximum term of imprisonment to ensure that the privilege of less-intense supervision is not abused?

individually tailor its rehabilitation efforts to better suit specific defendants, like Appellant, whose criminality is closely tied to drug dependency and underlying mental health diagnoses.[4] Thus, anticipatory revocation serves as an important deterrent tool, in addition to parole revocation, that protects the public and helps the courts tailor their rehabilitation efforts more effectively on a case-by-case basis.

Second, the doctrines of *stare decisis* and legislative acquiescence support upholding **Wendowski** and its progeny. For over forty years, we have explicitly authorized revocation courts to anticipatorily revoke probation based on our interpretation of § 9771. **See, e.g. Commonwealth v. Allhouse**, 33 A.3d 39 (Pa.Super. 2011); **Hoover**, **supra** at 323-24; **Commonwealth v. Ware**, 737 A.2d 251, 253-54 (Pa.Super. 1999); **Miller**, **supra** at 1265-66; **Commonwealth v. Dickens**, 475 A.2d 141, 152-53 (Pa.Super. 1984); **Wendowski**, **supra** at 630. Thus, it has been clearly established that "a court may revoke a probationary sentence at any time prior to its completion if the defendant demonstrates to the court that he is

---

[4] Upon revocation of parole, the only sentencing option available is recommitment to serve the balance of the prison term initially imposed. **See Commonwealth v. Kalichak**, 943 A.2d 285, 290 (Pa.Super. 2008). However, upon revocation of probation, the sentencing court has all of the alternatives that previously existed at its disposal. **See** 42 Pa.C.S. § 9771(b); **see also Commonwealth v. Coolbaugh**, 770 A.2d 788, 792 (Pa.Super. 2001). Accordingly, upon revocation of probation, the court can adjust the court-ordered specific conditions of probation, as long as they "are germane to, elaborate on, or interpret any conditions of probation" that were set by the original sentencing court. **Commonwealth v. Shires**, 240 A.3d 974, 978 (Pa.Super. 2020) (citing **Commonwealth v. Elliott**, 50 A.3d 1284, 1288 (Pa. 2012)).

unworthy of probation." **Wendowski** at 630. This precedent provided the legal landscape upon which trial courts chose probationary tails from among the sentencing options available to them. I think it is beyond cavil that knowledge that probation could be revoked at any time upon a defendant's commission of a new crime or violation of a specific condition of his probation informed some of these courts' decisions. Sentencing schemes may well have been structured quite differently had the courts been aware of the constraint that the Majority now imposes.

Furthermore, since **Wendowski**, the legislature has amended § 9771 twice. **See** Commonwealth's brief at 16. However, neither amendment has addressed the operative language at issue here. Therefore, the legislature appears to have acquiesced in the long line of precedent borne of the **Wendowski** holding that the conditions of probation begins at the time it is imposed. **Id**.; **see also, e.g. Commonwealth v. Bradley**, 834 A.2d 1127, 1133 (Pa. 2003) (considering the "three strikes" provision of the sentencing code and finding the fact that "several versions of the [sentencing] Guidelines adopted the same definition of 'transaction'" as "at least some evidence of legislative acquiescence in the definition.").

While the Majority does not mention the Commonwealth's *stare decisis* and legislative arguments, the **Simmons** Court upon which the Majority relies, acknowledged that the Superior Court has reaffirmed **Wendowski** many times and conceded that the doctrine of *stare decisis* can still apply in situations, such as here, where the Pennsylvania Supreme Court has never

ruled on the issue. ***Simmons*** , slip op. at 24-25. Nevertheless, the ***Simmons*** Court gave short shrift to the Commonwealth's position, quickly dismissing and departing from established precedent because it found that precedent relied on an erroneous interpretation of § 9771 which ran "contrary to the plain language of the statutes" for decades. ***Id***. at 27.

While I do not deem our Court's repeatedly consistent interpretation of § 9771 and the legislature's acquiescence to that interpretation as dispositive of the question of statutory interpretation, neither would I deem it insignificant as the Majority suggests by sidestepping the issue in its entirety. Legal precedent exists to ensure "the evenhanded, predictable, and consistent development of legal principles." ***Payne v. Tennessee***, 501 U.S. 808, 827 (1991). Section 9771 is not obscure or rarely applied, and the General Assembly has had forty years to undo the holding in ***Wendowski*** if it thought the holding incorrect or that defendants who commit new crimes or violate specific terms of probation while serving parole deserved more lenient treatment. ***See, e.g. Mosley v. Workers' Compensation Appeal Board (City of Pittsburgh)***, 937 A.2d 607, 609-10 (Pa.Cmwlth. 2007) ("Fourteen years of a single judicial interpretation, accepted without question by the General Assembly, fatally undermines Claimant's contention. . . ."); ***see also***, ***e.g.***, ***Commonwealth ex rel. Fox v. Fox***, 212 A.2d 912, 914 (Pa.Super. 1965) (holding that the legislature was assumed to have agreed with judicial construction of a statute governing jurisdiction for child custody and maintenance proceedings where the legislature had not altered the statute for

thirty-four years following the decision). In circumstances, such as here, where the legislature has declined the opportunity to elucidate an ambiguous text, adherence to our precedent promotes notions of fairness and stability. Accordingly, I would not unsettle forty years of established jurisprudence. Instead, I would leave any amendment of § 9771 to the General Assembly.

Therefore, I respectfully dissent from the Majority's decision to vacate Appellant's sentence and remand with instructions to reinstate the original order of probation.

Judge Murray joins this dissenting memorandum.

This decision was reached prior to the retirement of Judge Shogan.